**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald L. MARTIN and Judy S. Weems, Defendants-Appellants.**

**Nos. 83–5684, 83–5688.**

United States Court of Appeals, Sixth Circuit.

Argued May 9, 1984.

Decided July 17, 1984.

Rehearing and Rehearing En Banc Denied Aug. 24, 1984.

tiary hearing. We affirm the conviction of appellant Judy S. Weems.

## I.

This case presents a bizarre and disturbing set of facts in which respected citizens of Greeneville, Tennessee, including a former assistant district attorney in the 20th Judicial District of Tennessee, his wife, two deputy sheriffs and a banker, conspired with others to import 1500 pounds of marijuana into the United States from Colombia, South America. The scheme was hatched by Larry Weems, a former assistant district attorney and husband of appellant, Judy Weems, who is also an attorney and a former juvenile judge. Larry Weems, who pleaded guilty, testified that he got the idea in 1982 from discussions with appellant Donald Martin, a client of Weems who was at the time an inmate in the Greene County, Tennessee jail, charged with offenses in Tennessee and North Carolina. Martin was an airplane pilot and had connections among drug traffickers in Florida and in Colombia. Weems secured Martin's release from jail, ostensibly to secure medical treatment, with the assistance of campaign contributions to the county sheriff, and embarked on a plan to import marijuana with Martin's help.

Thomas Woody Smith, argued, Greeneville, Tenn., Carl R. Ogle, Jr., argued, Jefferson City, Tenn., Charles E. Fraley, Rutledge, Tenn., for defendants-appellants in 83–5684.

John W. Gill, Jr., U.S. Atty., Guy Blackwell, argued, Asst. U.S. Atty., Greeneville, Tenn., for U.S. in both cases.

Gene P. Gaby, argued, Thomas L. Kilday, Milligan, Coleman, Fletcher, Gaby & Kilday, Greeneville, Tenn., for defendants-appellants in 83–5688.

Before KENNEDY and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge. .

Appellants in this case, Donald L. Martin and Judy S. Weems, were convicted of conspiracy to import and distribute marijuana in violation of 21 U.S.C. §§ 841(a), 846, 963. Appellants raise a number of issues in arguing for a reversal of their convictions. We find only one of these claims to have merit, and remand the case with respect to appellant Donald L. Martin for an eviden-

Martin arranged a number of meetings, in both Tennessee and Florida, with Weems and Martin's connections, at which they planned the deal. Weems and Martin planned to buy an airplane, which would be flown to Colombia to bring back a load of marijuana. Weems needed financing for this scheme, both money to buy the plane, and also front money to purchase the marijuana. So he approached a number of investors in Greeneville, including two deputy sheriffs and a local banker, all of whom participated in the plan. The banker arranged financing by making fraudulent loans to participants in the plan and to other parties. Many of the loans were secured with fictitious capital. Judy Weems signed her mother's name to one of the loans which was used to finance the plan.

In June 1982, Weems and Martin and others went to Miami and arranged to purchase a Beech A65 aircraft. Weems discovered upon his arrival in Florida that he needed additional money in order to purchase the plane. At his direction Judy Weems obtained $5000 from the banker which she wired from truck stops in Tennessee. The purchase was completed and the plane registered in Martin's name. Following the purchase Judy Weems arranged to have another $2000 wired to her husband in Florida. Martin, accompanied by other participants in the plan, flew the plane to Tennessee for repairs.

About a week later Martin and a friend of his named Lawrence Davis, also a pilot, flew the Beech aircraft to Miami, and left Miami a day later for Colombia. The plan was for Martin and Davis to land at an airstrip in Colombia where the load of marijuana would be waiting. They were to load the plane, fly back north, and drop the load in international waters off the coast of Florida. Larry Weems had arranged to have a high-speed motorboat waiting at the appointed drop site to retrieve the cargo and bring it into the United States.

But things did not go as planned. Instead of landing at the Colombian airstrip where the marijuana was waiting, Martin, flying in a storm, landed the plane at a military airbase in Barranquilla, Colombia, where he and Davis were immediately arrested and jailed. Meanwhile, the motorboat waiting for the drop was discovered by Bahamian naval officials who chased the boat and opened fire, but were unable to catch the conspirators.

Larry Weems, who was in Florida at this time, called Judy Weems in Tennessee with the bad news. She relayed the story to co-conspirators in Greeneville.

After this fiasco Larry Weems' efforts turned to securing the return of Martin and Davis and the Beech aircraft. To effect the release of the aircraft Judy Weems did a title search on the plane, which she and Larry Weems delivered to the Colombian consulate in Miami. Larry Weems also made a trip to Barranquilla in an attempt to procure the release of Martin and Davis.

Martin was released and returned to Miami in August 1982. On arrival he turned himself in to immigration officials for the crimes he was charged with in North Carolina and Tennessee. Davis returned to the United States in December 1982. The aircraft was eventually brought back to the United States and was seized by customs officials in Florida.

Some of the conspirators persisted for a time in a plan to bring back a load of marijuana in order to cover the loans, but by January 1983, Larry and Judy Weems had concluded that the whole deal was "washed up." The conspiracy came to the attention of law enforcement officials when the banker, concerned about the over-extension of credit and having no way to repay the loans, confessed his involvement and implicated the others. Soon afterwards Martin was interrogated and admitted his involvement in the plan, implicated others, and supplied taped conversations with Larry and Judy Weems and another co-conspirator.

Fourteen defendants were charged in a two-count indictment with conspiracy to import and distribute marijuana. Ten of the defendants, including Larry Weems and Lawrence Davis, pleaded guilty; one defendant was never identified or arrested. The remaining three defendants, Manuel Pacin, who was to have been the eventual purchaser of the marijuana, and the two appellants here, went to trial on pleas of not guilty. Pacin pleaded guilty on the second day of trial.

Appellant Martin maintains first that he was not guilty of conspiracy because although he had pretended to join in the undertaking and had assisted it, he had never intended that the plan be carried out, and indeed purposefully landed the aircraft at the wrong airstrip in Colombia to thwart the enterprise; and secondly, that he participated in the scheme only under Larry Weems' coercion. Martin had a heart condition and testified that Weems had threatened him with additional prison time on the two state charges if Martin did not cooperate, and Martin was afraid that he would

die in prison if he did not go along with Weems. Judy Weems maintained that she was ignorant of the plan to import marijuana until after the aircraft had been seized in Colombia, and then participated only to retrieve the aircraft, and not to import drugs. She claimed that to the extent that she did participate in the scheme, she did so in order to save her marriage to Larry Weems. The jury returned a guilty verdict on both counts against appellants.

We deal first with the issues raised by both appellants, and then those raised by Weems or Martin alone.

## II.

### A.

Appellants argue that they were incurably prejudiced by a remark which the trial judge made at a bench conference. The prosecutor was seeking to recall a defense witness, Martin's girlfriend, for additional cross-examination. Defense counsel objected and the judge sustained the objection. Counsel then approached the bench for the purpose of discussing the matter further out of the hearing of the jury, which, however, remained in the jury box. At the bench conference the following conversation took place:

> Prosecutor: Your Honor, if the court please, if she is allowed to testify, she would testify that she had numerous conversations during this time with Mr. Martin. Mr. Martin told her that he knew [one of the defendants from Miami] and Manuel Pacin, that they were, both men, involved in the drug trafficking down in Florida.

> The Court: I don't think that is necessary, under Martin's testimony, under Martin's testimony, *he is guilty*, but I am going to submit it to the jury, and his defense that he was threatened and so forth, that is no defense at all. (Emphasis added.)

Defense counsel failed to object to the judge's statement, "he is guilty," at that time, nor did they call to the judge's attention that he might have been overheard by the jury. Only after the jury had rendered a guilty verdict, did defense counsel file affidavits stating that they believed that the remark was audible to the jury. The government filed no affidavits in response. Defense counsel moved for permission to question the jury, and moved for a new trial. Both motions were denied.

The judge's remark constitutes an inadvertent comment—in that it was not directed to nor intended to be heard by the jury—on the evidence. A federal judge may comment on the evidence, but he or she must do so with great care and may not unduly prejudice the jury. *United States v. Murdock*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933); *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). Some comments may so usurp the jury's role as factfinder as to be incurable and to constitute reversible error. *Murdock; United States v. Yates*, 553 F.2d 518 (6th Cir.1977); *United States v. Kemp*, 504 F.2d 421 (6th Cir.1974); *United States v. Marion*, 477 F.2d 330 (6th Cir.1973); *United States v. Smith*, 399 F.2d 896 (6th Cir.1968); *United States v. Porter*, 386 F.2d 270 (6th Cir.1967); *United States v. Ornstein*, 355 F.2d 222 (6th Cir.1966). In order to determine whether the judge committed reversible error here it is essential to know what, if anything, the jury overheard. Only then can we determine whether it could have been cured by an instruction if it had been immediately called to the court's attention. Consequently, we retain jurisdiction, but remand Mr. Martin's case to the trial court for the specific limited purpose of holding an evidentiary hearing to determine if the jurors overheard any portion of the judge's remarks quoted above. *See Young v. United States*, 346 F.2d 793 (D.C.Cir.1965).

As to Mrs. Weems, we fail to see how the judge's remark with respect to Mr. Martin, even if overheard by the jury, could have unduly prejudiced her case. Numerous conspirators had pleaded guilty and testified about the conspiracy. Martin, who testified, admitted participation in the events of the conspiracy. Mrs. Weems did not contest the existence of the conspiracy, only her involvement in it.

### B.

■ Appellants also raise a significant question concerning the method by which the jurors were sworn. The members of the jury panel were sworn en masse on the first day of their terms, rather than following voir dire for each particular case. This has been the procedure followed in the Northern Division of the Eastern District of Tennessee for over twenty years.[1] We do not approve of this practice and believe that it should be prospectively discontinued. It is far preferable to administer the oath which instructs the jury on its responsibilities directly before each case. Swearing the jury immediately prior to the trial serves to emphasize the importance and the seriousness of the juror's task, and ensures that each juror is indeed sworn before he or she hears any evidence.

■ We cannot say, however, that the defendants' rights were violated by the court's failure here to administer the oath following voir dire. *See Cooper v. Campbell*, 597 F.2d 628 (8th Cir.), *cert. denied*, 444 U.S. 852, 100 S.Ct. 106, 62 L.Ed.2d 69 (1979).[2] The jurors were all sworn by the chief deputy clerk before any evidence was presented. Each juror swore before trial to try all criminal cases well and truly according to the laws of the United States, and this is the crucial consideration.

We also note that appellants did not object to the method of administering the oath either before or during the trial. Counsel for appellants stated in affidavits that they were unaware that the jury had not been sworn following voir dire, until after the jury had returned a verdict. We find this scarcely credible, as their affidavits also state that they were present in the courtroom throughout the trial. Counsel must have been aware that they did not see the oath administered.

This case is similar to *Walker v. United States*, 13 F.2d 844 (6th Cir.), *cert. denied*, 273 U.S. 726, 47 S.Ct. 237, 71 L.Ed. 860 (1926), which also arose from the Eastern District of Tennessee's method of wholesale swearing of jurors. In that case two jurors were by mistake not sworn at the beginning of their terms and were sworn only after several government witnesses had testified. The defense attorney objected to the swearing of the two jurors. The district attorney suggested that the earlier testimony be reread before the jurors, but the court deemed this unnecessary. Defense counsel did not indicate that he wished the testimony to be given again, yet asserted the untimeliness of the oath as grounds for reversal on appeal. We declined to reverse on the basis of an error which could have been remedied had defense counsel made a proper motion at trial. We reach the same conclusion here. Indeed, the present case is less problematic because all of the jurors here had sworn the oath prior to hearing any evidence. Counsel for appellants could have moved to have the jury sworn a second time after voir dire but instead waited until the jury had brought back its verdict to raise the issue. Under the circumstances appellants are not entitled to relief. *See United States v. Grosso*, 358 F.2d 154, 158 (3d Cir.1966); *United States v. Woodner*, 317 F.2d 649, 651–52 (2d Cir.), *cert. denied*, 375 U.S. 903, 84 S.Ct. 192, 11 L.Ed.2d 144 (1963).

Although we do not reverse appellants' convictions, we strongly disapprove of the practice of swearing the venire followed here. As we stated in *Walker*, we question whether such practice is "consistent with the dignity and effectiveness which should attend federal court trials." 13 F.2d at 845. The swearing of the jury also provides the critical point at which jeopardy

---

1. Although this action was filed in the Northeastern Division of the Eastern District of Tennessee, it was tried in the Northern Division, at Knoxville.

2. In *Cooper* the jury was sworn, apparently due to an oversight, only after opening statements by both parties had been made. The oath was sworn before any evidence had been presented, however, and the jury was cautioned not to consider the opening statements as evidence. The court found "no evidence that the delay in swearing the jury prejudiced petitioner's right to a jury trial, fair trial or due process." 597 F.2d at 629.

attaches. Moreover, the defendant should be accorded the assurance that the jurors have been sworn to try his case by observing them sworn. In cases tried after this date where objection is made to the procedure followed here, we will not hesitate to reverse.

## C.

■ Defendant Manuel Pacin went to trial with appellants Martin and Weems, but pleaded guilty on the second day of trial. The next morning a newspaper story, which the jury could have seen, reported the plea. Counsel for appellants brought this to the judge's attention that morning, claiming that they had been prejudiced. They did not, however, request a cautionary instruction. The judge did instruct the jurors that they must determine the guilt of each defendant individually. We find no reversible error in light of counsels' failure to request a more specific cautionary instruction. *United States v. Jones*, 647 F.2d 696, 700 (6th Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981); *see Grosso*, 358 F.2d at 158; *Woodner*, 317 F.2d at 651–52.

## III.

### A.

The trial judge conducted the voir dire of the jurors in this case, pursuant to Fed.R. Crim.P. 24(a).[3] Counsel for appellant Weems submitted the following question to the judge to be asked of the jury panel: "Do any of you feel that the laws should be more strictly enforced against lawyers?" The judge denied counsel's request that this question be asked. Appellant Weems now argues that the judge abused his discretion by this refusal and substantially impaired her peremptory challenge right.

Appellant Weems cites no case directly on point. She cites *United States v. Lewin*, 467 F.2d 1132 (7th Cir.1972), in which the court reversed for the trial judge's failure to ask a question regarding the jury panel's prejudice against the organizations employing the chief witnesses, when the testimony related to work performed for the organizations.[4] She also cites *United States v. Rucker*, 557 F.2d 1046 (4th Cir. 1977), in which the trial court improperly refused questions regarding physical and mental infirmities which would impair a person's ability to be a juror.

■ The question proposed here has nothing to do with the jurors' physical or mental capacity to appreciate evidence or ability to render an impartial verdict, but goes rather to the jurors' opinions as to how the laws should be *enforced*. Enforcement of the laws is a matter for the Attorney General and the United States Attorney in deciding whom to prosecute. Jurors play no role in deciding against whom the law will be enforced. The jury's role is only to determine the innocence or guilt of a defendant under a particular law. The question did not ask if the jurors were prejudiced against lawyers. The trial judge has wide discretion as to the questions to be asked at voir dire, *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1930); *United States v. Carabbia*, 381 F.2d 133, 136 (6th Cir.), *cert. denied*, 389 U.S. 1007, 88 S.Ct. 564, 19 L.Ed.2d 602 (1967), and we cannot say that he abused his discretion here.

---

**3.** Rule 24(a) reads:

> **Examination.** The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.

**4.** It is clear that it may also constitute an abuse of discretion for a judge to refuse to question jurors regarding racial prejudices. *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). A judge may not, however, be required to pose questions on all types of prejudices. *See United States v. Carabbia*, 381 F.2d 133 (6th Cir.), *cert. denied*, 389 U.S. 1007, 88 S.Ct. 564, 19 L.Ed.2d 602 (1967), in which we held that the trial court did not abuse its discretion by refusing to question jurors about possible prejudice against the defendant because of his involvement in the gambling business.

## B.

Appellant Weems argues that the trial judge improperly refused to allow testimony that she participated in the conspiracy only in order to preserve her marriage with Larry Weems, and testimony by a minister and a clinical psychologist regarding her capacity to enter into the conspiracy. We note, first of all, that the trial judge did allow a substantial amount of testimony regarding Mrs. Weems' relationship with her former husband and did allow the psychologist to testify as to his diagnosis of Mrs. Weems and the minister to testify about Mrs. Weems' state of mind. The excluded evidence regarding Mrs. Weems' marriage largely goes only to prove appellant's motive for participating in the conspiracy, not to the question of her guilt. A defendant's good motive is not a defense to criminal activity.

As to the testimony of the minister and the psychologist regarding their conclusions about her intent, the trial judge has wide discretion in admitting and excluding evidence directed at the capacity of a defendant to entertain a specific intent, *United States v. Demma*, 523 F.2d 981, 986 (9th Cir.1975), and appellate courts have been reluctant to second-guess the trial court on this issue. *United States v. Bennett*, 539 F.2d 45, 52–53 (10th Cir.), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976); *Demma*, 523 F.2d at 986–87; *United States v. Bernard*, 490 F.2d 907, 913 (9th Cir.1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). We note that Mrs. Weems did not raise a defense of insanity, and that the testimony by the psychologist which was offered was, as the court found in *Bennett*, "not directed at negating a particular mental capacity so much as it was offered as a justification." 539 F.2d at 53. Consequently, we find that the trial judge did not abuse his discretion by excluding testimony as to Mrs. Weems' capacity.

## C.

Mrs. Weems also contends that her conviction should be reversed because of unreasonable time limitations and interruptions on the part of the court during the presentation of the case. We have reviewed the record and agree that there were repeated interruptions and the court did at times impose significant time limitations on both sides. This trial was surely not without its constraints, and we recognize that the court frequently expressed its impatience with the attorneys for both sides. However, it has long been recognized that the trial judge is not only the moderator but also the governor of the trial, *e.g.*, *Quercia*, 289 U.S. at 469, 53 S.Ct. at 698; *United States v. Hickman*, 592 F.2d 931, 932–33 (6th Cir.1979); *United States v. Frazier*, 584 F.2d 790, 793 (6th Cir.1978). This role allows the trial judge a good deal of discretion in limiting testimony, requiring attorneys to frame questions properly, and interjecting himself or herself into the trial. *See, e.g.*, *Hickman*, 592 F.2d at 932–34; *Frazier*, 584 F.2d at 790. While the trial court may have tested the bounds of that discretion here, we do not believe that the interruptions and time limitations denied appellant a fair trial.

## IV.

### A.

Appellants' trial was set to begin on August 1, 1983. On July 22, 1983, appellant Martin retained counsel to replace his appointed counsel. On July 25, Martin's new counsel filed a motion for continuance, which the court denied. Martin now argues that this denial constituted reversible error.

The matter of a continuance is within the discretion of the trial judge, *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964), whose decision will be reversed only upon a showing of abuse of discretion. *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940); *United States v. Phillips*, 630 F.2d 1138, 1143 (6th Cir.1980); *United States v. Faulkner*, 538 F.2d 724, 729 (6th Cir.), *cert. denied*, 429 U.S. 1023, 97 S.Ct. 640, 50 L.Ed.2d 624 (1976); *United States v. Ploeger*, 428 F.2d 1204, 1205 (6th Cir.1970). To determine whether there has

been abuse we look to see if the defendant suffered any actual prejudice as a result of the denial, whether additional time would have produced more witnesses or have added something to the defendant's case. *Faulkner,* 538 F.2d at 730; *United States v. Moore,* 419 F.2d 810, 811 (6th Cir.1969); *United States v. Sisk,* 411 F.2d 1192, 1194 (6th Cir.1969), *cert. denied,* 396 U.S. 1018, 90 S.Ct. 584, 24 L.Ed.2d 509 (1970); *United States v. Decker,* 304 F.2d 702, 704 (6th Cir.1962).

■ Martin makes no specific showing of prejudice, but rather argues generally that more time was required because of the complexity of the case. As the court said in *Sykes v. Commonwealth of Virginia,* 364 F.2d 314 (4th Cir.1966): "Every lawyer on the losing side of a case probably feels that if he had had a little more time he might have done something else which would have been helpful." *Id.* at 316. We note that counsel did have more than a week to prepare for trial and presumably had access to the fruits of appointed counsel's earlier preparation efforts. We do not see any evidence that the court abused its discretion in failing to grant a continuance in this case.

### B.

■ Martin also opines that the District Court erred in refusing to give the charge he submitted on his defense of coercion which he framed as a defense of necessity. The court instead instructed the jury:

> Coercion or compulsion may provide a legal excuse for the crime charged in the indictment. To provide a legal excuse for any criminal conduct, however, the compulsion must be present and immediate and of such a nature to induce a well-founded fear of impending death or serious bodily injury. The alleged fact that a defendant is told he will suffer incarceration if he does not engage in criminal activity provides no legal excuse for committing a crime.

The standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury. *Gradsky v. Sperry Rand Corp.,* 489 F.2d 502, 503–04 (6th Cir.1973); *Tyree v. New York Central R.R.,* 382 F.2d 524, 527 (6th Cir.), *cert. denied,* 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967); *Nolan v. Greene,* 383 F.2d 814, 816 (6th Cir.1967). A judge does not commit error because he or she fails to use language contained in a request, so long as the instruction given is accurate and sufficient. *Carruba v. Transit Casualty Co.,* 443 F.2d 260, 264 (6th Cir.1971); *Cobb v. Union Railway,* 318 F.2d 33, 37 (6th Cir.), *cert. denied,* 375 U.S. 945, 84 S.Ct. 352, 11 L.Ed.2d 275 (1963). We find that the court's instruction here stated the law correctly, *see United States v. Campbell,* 675 F.2d 815, 820–21 (6th Cir.), *cert. denied,* 459 U.S. 850, 103 S.Ct. 112, 74 L.Ed.2d 99 (1982), and adequately submitted the issue to the jury.

### V.

■ Both appellants argue that there were other errors in the trial which require that their convictions be reversed. Martin argues that the court erred in denying him issuance of subpoenas for an indigent defendant, in denying his motion to dismiss the indictment or to suppress evidence based on a claimed grant of governmental immunity, and in appointing a jury foreperson, rather than allowing the jury to elect its own. Weems argues that the trial court erred in stating in a colloquy with counsel in the presence of the jury that it is everyone's duty to report a crime, in refusing to dismiss count two of the indictment (conspiracy to distribute marijuana) for insufficient evidence, in failing to give the jury a requested instruction on the knowledge required for participation in a conspiracy, and in appointing the jury foreperson. We have reviewed each of these alleged errors and find them to be without merit. Accordingly, we affirm the conviction of appellant Judy S. Weems. We remand the case of appellant Donald L. Martin to the District Court for the specific limited purpose of conducting an evidentiary hearing to determine what portion, if any, the jurors heard of the judge's remarks at the side bar conference. We request the District Court to make specific

findings as to precisely what words the jurors heard, and the subject to which they understood the words to refer.