887 F.2d 1088
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Timothy Darnell WADE, Defendant-Appellant
 No. 88-2029.
 United States Court of Appeals, Sixth Circuit.
 Oct. 23, 1989.
 
 Before MERRITT, Chief Judge, and RYAN, Circuit Judge, and PECK, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 Defendant Timothy Wade appeals from a jury verdict of four counts of distributing cocaine base ("crack" cocaine) in violation of 21 U.S.C. Sec. 841(a)(1). The issues presented on appeal are: (1) whether there was sufficient evidence for the jury to conclude that the government had not entrapped defendant; and (2) whether the jury instructions on both reasonable doubt and entrapment so unfairly and inadequately submitted the law to the jury so as to constitute reversible error. For reasons stated below, we affirm defendant's conviction.
 
 
 2
 Pursuant to an undercover task force of postal inspectors investigating the use and sale of narcotics by Michigan postal employees, postal inspectors placed an undercover confidential informant inside the General Mail Facility in Detroit, Michigan. The informant, James Brooks, purchased a total of 22.5 grams of "crack" cocaine from defendant as a result of four exchanges spanning September 23, 1986 to March 2, 1987. Each hand-to-hand exchange between defendant and the informant occurred outside the General Mail Facility just before defendant's 3:00 PM shift, all in four exchanges on videotapes which, along with the four audio tapes, were played for the jury at trial.
 
 I. ENTRAPMENT: SUFFICIENCY OF EVIDENCE
 
 3
 Defendant contends that the conduct of the government constituted entrapment as a matter of law. A valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct. See Mathews v. United States, 485 U.S. 58, ----, 108 S.Ct. 883, 886 (1988) (citing Sorrells v. United States, 287 U.S. 433 (1932)). Predisposition, the primary element in an entrapment case, addresses whether defendant was an "unwary innocent" rather than an "unwary criminal" who capitalized on the opportunity to commit the crime. Id. (citing United States v. Russell, 411 U.S. 423, 433, 436 (1973)).
 
 
 4
 The question of entrapment generally is preserved for the jury, rather than for the court. Id. (citing Sherman v. United States, 356 U.S. 369, 377 (1958)). The Sixth Circuit's analysis of entrapment includes consideration of whether the defendant evidenced reluctance to commit the offense, whether the defendant engaged in the activity for profit, and the nature and strength of the government's inducement. See United States v. Johnson, 855 F.2d 299, 303 (6th Cir.1988) (citing United States v. McLernon, 746 F.2d 1098, 1112 (6th Cir.1984)). The standard of review on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court places a heavy burden on defendants claiming insufficient evidence, and grants the government the benefit of all reasonable inferences which may be drawn from the evidence. See United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.) (quoting United States v. Soto, 716 F.2d 989, 991 (2d.Cir.1983)), cert. 1193 (1984). Attacks on the credibility of government witnesses at this stage go to the quality and not the sufficiency of the evidence. Adamo, 742 F.2d at 935.
 
 
 5
 Defendant's challenge under Jackson v. Virginia would require us to discredit the testimony of government witnesses in favor of defendant's. The government presented tape recordings of defendant "glad[ly]" guaranteeing the informant a constant flow of cocaine, stating that "everybody ready to make the money now," and speculating about the price of cocaine in future exchanges. These tape-recorded statements more accurately describe willingness than reluctance. See United States v. Silva, 846 F.2d 352, 355 (6th Cir.1988) (quoting McLernon, 746 F.2d at 1113) (reluctance is most important element of predisposition). These statements also reveal defendant's profit motive in his dealings with the informant.[1] As for the government's inducement, the informant did not more than, after being alerted to the fact that defendant carried a beeper at work, introduce himself and ask to buy some cocaine. Defendant said "yes" and made good on his word on four separate occasions. Viewing the evidence in the light most favorable to the government, we conclude that the jury was justified in finding that the defendant was predisposed to selling cocaine and that the government's inducement did not overwhelm his will to resist committing the offense.
 
 II. JURY INSTRUCTIONS
 A. Reasonable Doubt
 
 6
 Defendant next argues that the court's jury instructions constitute reversible error. The appellate standard of review of a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury. United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984). A proper reading does not wrench from the instruction bothersome snippets of language, but rather, aspires to a contextual understanding of the entire charge. See, e.g., United States v. Horton, 847 F.2d 313, 322 (6th Cir.1988) ("[I]t is clear that no single provision of the jury instruction can be read in isolation"); United States v. Smith, 584 F.2d 759 (6th Cir.1978), cert. denied, 441 U.S. 922 (1979) (instructions not reviewable on sentence-by-sentence basis). Further, it is not reversible error to use language that deviates from a party's request, provided that the instruction as given is accurate and sufficient. Horton, 847 F.2d at 322 (citing Martin, 740 F.2d at 1361). We find that the jury instruction given here stated the law correctly and adequately submitted the issue to the jury.
 
 
 7
 Defendant contends that the courts erred in deviating from the language found in 1 Devitt & Blackmar, Federal Jury Practice and Instructions Sec. 11.14, at 310 (3d ed. 1977), which describes reasonable doubt as "the kind of doubt that would make a reasonable person hesitate to act ... upon it in the most important of his own affairs." By its departure from Devitt & Blackmar, defendant argues, the court left jurors to "freely roam" an area of "unlimited speculation," harnessed only by their individual notions of "common sense." Defendant also challenges that portion of the charge which instructed jurors not to concern themselves with defendant's fate "if the truth should happen to convict him." Read together, defendant argues, the two objectionable provisions--one omitted from Devitt & Blackmar and the other submitted by the District Judge--yield two undesirable results. First, the instruction as given expresses the trial court's impression that the defendant was guilty; and second, that by "substituting" the instructions that the jury not concern themselves with the impact of the truth for Devitt & Blackmar 's "hesitate to act" admonishment, the court's instruction effectively altered the tenor (if not the outcome) of the jury's verdict.
 
 
 8
 The pertinent text of the District Court's instruction is as follows:
 
 
 9
 It is essential that each element of the crime, as I will define them for you in a moment, must be proved by that measure or proof beyond a reasonable doubt. Now, as I charged you that the burden is always upon the United States Attorney, this burden never shifts to the defendant. For the law never imposes upon an accused in a criminal case the burden or duty of calling any witnesses or producing any evidence.
 
 
 10
 Now, I said to you that you must be satisfied of the defendant's guilt on any one or more of the charges beyond a reasonable doubt. It's been said that a juror is satisfied beyond a reasonable doubt as to an issue in controversy when, after a fair and full consideration of the evidence in the case, a juror can say that he or she is firmly convinced of the defendant's guilt. It is not required that the Government prove guilt beyond all possible doubt. The test is one of reasonable doubt.
 
 
 11
 A reasonable doubt, members of the jury, is just what the words imply. A reasonable doubt is a doubt based upon reason and common sense, a doubt that grows out of the evidence or a lack of evidence in a given case. In other words, it's not a flimsy, fanciful, or fictitious doubt that you can raise about anything or everything, nor is it a doubt based upon sympathy, bias or prejudice.
 
 
 12
 (Jury Instructions, Tr. 395-96).
 
 
 13
 Taken as a whole, this instruction fairly and adequately presented the issues and law to the jury. The court's charge advises that jurors, after "fair and full consideration of the evidence," "firmly convinced ... of guilt," evaluate their doubt in terms of "reason and common sense." Id. As a guiding principle this instruction suitably supplants the requested "hesitate to act" standard. Despite defendant's protestations, nothing about "reason and common sense" depreciates or misrepresents this court's understanding of reasonable doubt.
 
 
 14
 Defendant also challenges the court's charge that the jury focus on defendant's guilt or innocence rather than on the punitive, incarcerative, and rehabilitative aspects of the postconviction phase of the criminal justice system.[2] The government suggests that the court may have offered this portion of the instruction in response to defense counsel's closing argument, which alluded to defendant's sentencing phase:
 
 
 15
 MR. GOLD: And after the Court finishes charging you, it's going to be in your hands. And you're going to have Timmy Wade's life in your hands. Because if you send him to prison, if he's convicted now, he can never get another--
 
 
 16
 THE COURT: The penalty in this case is none of the jury's business and I'm going to tell them that, Mr. Gold. That's my responsibility.
 
 
 17
 (Tr. 378).
 
 
 18
 The court's instruction in no way jeopardized defendant's entitlement either to an accurate description of reasonable doubt or to the preservation of the presumption of innocence. Persistent references to the jury's truth-finding mission do not betray, as defendant claims, the court's foregone conclusion of guilt. Rather, the instruction merely distinguishes the responsibilities of judge and jury. The jury's "sense of justice," and not its "sympathy, bias or prejudice" should inform the jury in attempting to reach a "true, honest, and logical conclusion." This language in no way compromised the defendant or misinformed the jury.
 
 
 19
 "Reasonable doubt" is as amorphous a term as any in the legal lexicon. The United States Supreme Court concurs in this observation. See Holland v. United States, 348 U.S. 121, 140 (quoting Miles v. United States, 103 U.S. 304, 312 (1954)) ("Attempts to explain ... 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury"). Nonetheless, courts must meet certain standards in their attempts to give content to the concept, and we find that the District Court met these standards, as consistently articulated in the law of this Circuit.
 
 B. Entrapment
 
 20
 Defendant also objects to the District Court's jury instruction on entrapment, which included the following hypothetical offered to illustrate the concept of predisposition:
 
 
 21
 For example, when the government suspects that a person or persons are engaged in the illicit sale of narcotics, it is not entrapment for the government agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from the suspected person or persons.
 
 
 22
 As stated above, the appellate standard of review of a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury. Martin, 240 F.2d at 1361.
 
 
 23
 Defendant claims that only a hypothetical involving a crime distinct from the instant case is permissible in a jury instruction. The United States Supreme Court and this Circuit have sanctioned the use of hypotheticals in jury instructions. See McLernon, 746 F.2d at 1110. This hypothetical erects only a broad conceptual framework, explaining the legal standard while nowhere referring to defendant's particular level of reluctance or the government's level of inducement. Further, defendant cites no authority for his proposal to restrict hypotheticals to settings factually distinguishable from those to which they are to be applied.
 
 
 24
 Accordingly, defendant's conviction is affirmed.
 
 
 
 [1]
 Defendant's profit motive also is revealed by his pricing arrangement; his prices were 10-50% higher than customary
 
 
 [2]
 The court's precise language is as follows:
 Now, members of the jury, you must take the law as the Court has given it to you. But as I said, with a determination of the facts, the Court has no right in law to interfere and, I might add, the Court has no disposition to interfere, for the finding of the facts is your job. That responsibility rests squarely on your shoulders and none other. Under your oath, you're duty bound to find the facts fairly and squarely as you believe the evidence warrants. You may not decide this case by reason of sympathy, bias or prejudice or what may happen to the defendant should you convict him, because that becomes the Court's business. You should be guided, members of the jury, by a sense of justice and your obligations under your oath. So take the testimony, members of the jury, all that the Court has allowed to stand in the record, study it, analyze it, and you determine what its true, honest, and logical conclusion is. That is the role that you take, members of the jury, as a juror in this case, one whose obligation is to find the truth. And that's all you're here for.
 You're not here to please anybody, and you're not here to concern yourselves with what should happen to the defendant if the truth happens to convict him. And you pronounce that truth in the form of a verdict. That's what the word verdict actually means. So it's no mystery.
 (Jury Instructions, Tr. 408).