NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0558n.06

No. 08-6395

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 26, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

WILLIAM RICHARDS,

     Defendant-Appellant.

                                /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF KENTUCKY

Before: COLE and CLAY, Circuit Judges; and KATZ, District Judge.[*]

**KATZ, District Judge.** Defendant William Richards appeals his conviction on two counts of making false statements to influence administrative action in violation of 15 U.S.C. § 645(a). Richards was indicted and tried by a jury on three counts of making false statements on three applications he submitted to the Small Business Administration ("SBA"); the jury acquitted him on one count and convicted him on the remaining counts. We **AFFIRM**.

BACKGROUND

In late 2005, the five children of Harry Lusk, co-founder of Commonwealth Solutions, LLC ("Commonwealth"), founded Diversified Solutions, LLC ("Diversified"), a construction company. Leigh Ann Alexander, one of the Lusk siblings, was to be Diversified's financial overseer; her brother, Jeff Lusk, would be the operations manager; and brother Michael Lusk, an attorney, would be the company's president.

_____

[*] The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

Diversified hired Richards, a consultant who had experience in preparing and submitting government applications for small businesses, to prepare and submit an application for Diversified to receive HUBZone certification from the SBA. The Lusk children knew Richards from his association with their father, and they knew that he had successfully obtained HUBZone certification for Commonwealth.

The HUBZone program is designed to encourage economic development in distressed communities. To be certified, a company must have its principal office in a HUBZone and have at least thirty-five percent of its employees live in a HUBZone.

On January 23, 2006, Richards submitted a HUBZone application on behalf of Diversified stating that Diversified had two employees, one of whom lived in a HUBZone, and that Diversified's principal office was located in a HUBZone at 212 East Caroline Street in Irvington, Kentucky. At the time Richards submitted the applications, however, Diversified had no employees and no office in a HUBZone. The application also identified Michael Lusk as the "person submitting" the application, instead of Richards. When Michael Lusk found out that he had been designated as submitting the application, he called the SBA, had the application withdrawn, and told Richards to resubmit the application with Richards identified as the "person submitting" it. On February 15, 2006, Richards resubmitted the application, with the only change being that he was now listed as the "person submitting" the application.

A previous HUBZone application prepared by Richards a year before for Commonwealth also listed 212 East Caroline Street as Commonwealth's principal office, and stated that Commonwealth had two employees, one of whom lived in a HUBZone. Although Commonwealth

2

did in fact rent office space at 212 East Caroline Street, no one worked there. While two of Commonwealth's owners claimed to work forty hours a week for Commonwealth, and one of them claimed to live in a HUBZone in St. Louis, neither was on the company's payroll.

After a Commonwealth employee wrote an anonymous letter to the SBA casting doubt on Commonwealth's qualifications to be a HUBZone company, the SBA and the Department of Defense opened an investigation that led to a one-count grand jury indictment charging Richards with falsely stating on the Commonwealth application that Commonwealth had two employees, one of whom lived in a HUBZone. The grand jury later superseded the indictment to add a count charging Richards with falsely stating that Commonwealth's principal office was in a HUBZone.

Richards moved to dismiss the second count as multiplicitous, arguing that submitting a false application constitutes only one crime, no matter how many false statements appear in that application. The Government agreed with Richards that the counts were arguably multiplicitous and sought a continuance of the trial to request that the grand jury consolidate the two counts into one. Richards objected to the continuance, but was overruled by the district court.

During the continuance period, the Government presented the evidence from the Diversified applications to the grand jury, which returned a second superseding indictment, with Count I charging Richards with making false statements in the Commonwealth application; Count II charging Richards with making false statements in the January 23 Diversified application; and Count III charging Richards with making false statements in the February 15 Diversified application. Richards moved to dismiss Counts II and III, alleging that the Government had acted beyond the scope of the continuance in seeking to add new charges to the superseding indictment. The district

court denied Richards's motion, noting that nothing in its prior order prohibited the Government from bringing additional charges.

After trial, the jury acquitted Richards of Count I but convicted him on Counts II and III. The district court denied Richards's motion for a new trial and sentenced him to two years' probation. Richards now appeals.

## DISCUSSION

Richards first argues that the district court abused its discretion when it granted the Government a continuance to correct the possible multiplicity error in the superseding indictment, instead of simply dismissing the second count outright. "The matter of a continuance is within the discretion of the trial judge, whose decision will be reversed only upon a showing of abuse of discretion." *United States v. Martin*, 740 F.2d 1352, 1360 (6th Cir.1984) (internal citation omitted). So too, "[t]he standard of review of a district court's refusal to dismiss an indictment is whether there was an abuse of discretion." *United States v. Overmyer*, 899 F.2d 457, 465 (6th Cir. 1990).

The district court in this case was required to dismiss the second count, in Richards's view, because any multiplicity problem was the Government's fault. Richards also contends that the Government sought the continuance in bad faith, in order to circumvent the necessity of bringing a motion under Federal Rule of Evidence 404(b) to admit evidence of the statements contained in the Diversified applications. But Richards cites no authority for the proposition that a trial court is required to dismiss a possibly multiplicitous charge outright, instead of granting the prosecution a continuance to correct the potential error. Nor is there any authority for the notion that it is prosecutorial misconduct to seek to amend an indictment on the basis of evidence that would

4

otherwise only be admitted at trial pursuant to Rule 404(b). To the extent that Richards argues that the continuance violated the Speedy Trial Act, he has waived this objection by failing to move for dismissal on Speedy Trial Act grounds before trial. See 18 U.S.C. § 3162(a)(2).

Richards next contends that the district court should have dismissed the two new counts relating to the Diversified application in the second superseding indictment. Richards argues that the Government's course in seeking to add these new charges was "sharp practice" and severely prejudicial. But, as the district court noted, "[a]lthough [the] June 9, 2008, order to continue the trial was specifically granted to allow the Government an opportunity to correct the multiplicity issue in its indictment, nothing in the order prohibited the Government from bringing new and additional charges." (Mem. Op. & Order 2). To the extent that Richards might have required additional time to prepare a defense to the new charges, he could have sought a continuance under 18 U.S.C. § 3161(h). But Richards did not seek such a continuance, and thus his argument that he was prejudiced by the district court's refusal to dismiss the new counts added during the continuance period rings hollow.

Richards also argues that there was insufficient evidence to allow the jury to find him guilty on the two counts of making false statements on the Diversified application. Specifically, Richards contends that the evidence was insufficient to support a finding that he made the false statements on those applications knowing them to be false, or that he did so for the purpose of influencing SBA action. The statute Richards was convicted of violating requires proof of both elements. See 15 U.S.C. § 645(a) ("Whoever makes any statement knowing it to be false . . . for the purpose of

5

influencing in any way the action of the [SBA] . . . shall be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both.").

This Court must uphold the jury's verdict if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In making this determination, the Court "draw[s] all available inferences and resolve[s] all issues of credibility in favor of the jury's verdict." *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998). The prosecution "may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995). Thus, "a defendant claiming insufficiency of the evidence bears a heavy burden." *Maliszewski*, 161 F.3d at 1005.

Richards cannot meet that "heavy burden" in this case. Richards testified at trial that he received the false information about Diversified's employees and principal office from the Lusks, and simply entered that information into the form, believing it to be true. Michael Lusk and Leigh Ann Alexander both testified that they did not provide the false information to Richards. According to Richards, this testimony only shows that Jeff Lusk (who did not testify at trial) must have been the person who gave him the false information.

But Richards himself indicated in his testimony that the Lusks did not actually tell him Diversified had an office at 212 East Caroline Street or that any employees worked at that location at the time Richards prepared the application, only that Diversified was planning to eventually rent office space at that location and transfer employees there. (Trial Tr. Vol. III 187-88). Moreover, the

jury was not required to find Richards's testimony credible. Instead, the jury might have found that, just as Michael Lusk and Leigh Ann Alexander did not provide the false information to Richards, neither did Jeff Lusk.

Richards argues that the proof at trial was also insufficient to support a finding that he acted "for the purpose of influencing in any way the action of the [SBA] . . . . " 15 U.S.C. § 645(a). Specifically, Richards claims that because the SBA would not have acted on his application unless he responded affirmatively to a subsequent email asking him to certify the completeness and accuracy of the application, and he had no intention of responding to such an email, he did not submit the application for the requisite purpose. But it has long been settled that this element of § 645(a) "does not require the government to show that the particular statement would have, in fact, affected the action of the S.B.A." *United States v. Carter*, 526 F.2d 1276, 1278 (5th Cir. 1976). The evidence in the record supports a jury finding that Richards submitted the application as part of an effort to have the SBA certify Diversified as eligible to receive contracts reserved for HUBZone businesses, which is enough to sustain the jury's verdict as to the second element of § 645(a).

Finally, Richards argues that the district court abused its discretion in denying his motion for a new trial. In support of this argument, Richards complains that the district court overlooked unspecified instances of "bullying" of witnesses and argues that his conviction was contrary to the weight of the evidence at trial. For substantially the same reasons noted above, however, Richards fails to carry his burden of showing that any errors in his trial, cumulatively or individually, warrant relief from the jury's verdict.

## CONCLUSION

For the foregoing reasons, the district court's judgment of conviction is **AFFIRMED**.