NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0116n.06

Case No. 21-5751

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 14, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| ERIC DEON GOODEN, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |
| | ) | |

Before: COLE, CLAY, and THAPAR, Circuit Judges.

COLE, Circuit Judge. In September 2020, Eric Gooden pleaded guilty to three counts of being a felon in possession of a firearm. Although Gooden's sentencing hearing was originally scheduled to take place in February 2021, the district court delayed it twice because Gooden was awaiting a liver transplant and related aftercare. At the rescheduled sentencing hearing in August 2021, Gooden again moved for a continuance, explaining he might need another transplant—this time for his kidney. The district court denied Gooden's motion and he was sentenced to 42 months' imprisonment. Gooden now appeals the district court's denial, arguing that it resulted in actual prejudice to his defense. We affirm.

I. BACKGROUND

On two separate occasions in June 2019, Gooden sold firearms to an undercover officer. Upon the execution of a search warrant, a firearm was found in Gooden's apartment. Because of

his previous record, Gooden was charged with three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On September 11, 2020, Gooden pleaded guilty to the charges.

At the plea hearing, defense counsel told the district court that Gooden was awaiting a liver transplant. Gooden previously received a transplant in 2007, but his body had started to reject the liver. Because of his worsening condition, Gooden's lawyer requested a continuance. The government agreed to the continuance. The district court set the sentencing date for four months out, in February of 2021. In the interim, Gooden remained on pretrial release.

In anticipation of sentencing, U.S. Pretrial and Probation Services ("Probation") prepared a Presentence Investigation Report ("PSR"). Probation gave an advisory Guidelines range of 37–46 months' imprisonment. Probation also suggested that Gooden's need for an organ transplant might justify a downward sentencing variance. In response to the PSR, Gooden filed a position paper and advocated for an alternative to imprisonment. Specifically, he argued that his worsening liver failure, and need for a second liver transplant, constituted an extraordinary physical impairment that justified a sentence other than imprisonment under USSG § 5H1.4. Gooden asked the district court to sentence him to home detention, which he argued would best allow him to respond if a liver became available.

In February 2021, the court granted Gooden a second continuance. At that time, Gooden was on the liver transplant list, but there was no information as to whether and when he would receive the transplant. For that reason, Gooden had to be prepared to travel to Texas, where the transplant doctor was located, on as little as a few hours' notice. The government did not object to the district court's decision to continue the hearing another time. The government also told the court it would investigate the kinds of care that the Bureau of Prisons (BOP) could provide

Gooden. The rescheduled sentencing hearing was set for June 2021. Gooden received a transplant in March 2021.

To allow Gooden adequate time to recover from the transplant, the sentencing hearing was scheduled for August 3, 2021. Before sentencing, defense counsel moved for a third continuance, explaining that Gooden might need an additional transplant—this time for a kidney. Gooden's lawyers also informed the court that Gooden had a follow-up appointment in Texas to discuss his kidney condition on August 19, 2021. The defense explained it was unsure whether the BOP was aware of the extent of Gooden's medical needs. According to the Gooden's counsel, a continuance would ensure that Gooden could attend the upcoming appointment and have his medical needs addressed. But the defense was unable to contact any medical providers, or give the court any related medical documentation, to verify that Gooden might need another transplant. In contrast, the government provided the court with a letter from the BOP stating the federal prison system could provide adequate care for Gooden's medical condition. After considering this information, the district court denied Gooden's request for a third continuance.

The district court gave Gooden three reasons for its denial of the requested continuance. First, Gooden's lawyer was about to leave the Office of the Federal Defender, and the court was concerned that a change in counsel would harm Gooden, especially if the new lawyer was unfamiliar with Gooden's extensive medical history. Second, given the BOP's letter, the court determined there was no reason to question the adequacy of the medical care that the BOP could provide to Gooden. Third, although defense counsel argued a continuance was necessary because Gooden was experiencing kidney problems and might need another transplant, Gooden had not provided any medical records to support this claim. The district court had previously delayed Gooden's sentencing so he could receive a liver transplant and the necessary aftercare. Because

those problems had been resolved, and nothing in the record provided new information regarding Gooden's kidney problems or suggested that the BOP could not adequately care for Gooden, the district decided to move forward with sentencing.

Neither party objected to Probation's calculation of the applicable Guidelines range of 37–46 months' imprisonment. And after considering the factors under 18 U.S.C. § 3553(a), the district court sentenced Gooden to 42 months' imprisonment. The court also allowed Gooden to self-report.

On August 9, 2021, Gooden timely filed his notice of appeal.

## II. ANALYSIS

As an initial matter, district courts must sentence defendants without unnecessary delay. Fed. R. Crim. P. 32(b)(1). But district courts may delay sentencing for good cause. Fed. R. Crim. P. 32(b)(2). "The matter of a continuance is within the discretion of the trial judge, whose decision will be reversed only upon a showing of abuse of discretion." *United States v. Martin*, 740 F.2d 1352, 1360 (6th Cir. 1984) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

To determine whether a court abused its discretion in denying a motion for continuance, we evaluate whether the district court reached its decision based on an arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay." *Sarafite*, 376 U.S. at 589. We also consider whether the defendant suffered "any actual prejudice as a result of the denial, whether additional time would have . . . added something to the defendant's case." *Martin*, 740 F.2d at 1361.

Gooden argues the district court abused its discretion when it denied his final motion for a continuance. According to Gooden, the district court abused its discretion because the denial was motivated by expediency in the face of his "justifiable request for delay." And Gooden contends

that the denial resulted in actual prejudice to his defense. We conclude, however, that the district court did not abuse its discretion by denying Gooden's motion to continue.

First, the district court's denial was not motivated by an arbitrary insistence on expediency. When defense counsel moved for a continuance in August 2021, the court had already twice exercised its discretion to delay Gooden's sentencing. In granting these continuances, the court wanted to ensure Gooden could receive his liver transplant and receive the necessary aftercare. "I want to make the best decision that I can make. I'm concerned about Mr. Gooden's health . . . so we want to give Mr. Gooden every opportunity to present his case." (Report Date Tr., R. 62, Page ID 412–413.) The district court also stated it would be helpful if the government would assist in getting "more insight from the Bureau of Prisons about how they handle" prisoners with the kinds of medical needs Gooden had. (*Id.* at PageID 413.) Thus, the district court had no objection to delaying sentencing on two occasions to ensure Gooden could access the healthcare he needed, best present his defense, and ensure the BOP could provide adequate aftercare for Gooden. These actions by the district court suggest it was not concerned with expediency.

Also, in denying Gooden's motion, the district court provided three defensible reasons for its decision. First, the court noted that Gooden's defense counsel would be leaving the Office of the Federal Defender, meaning someone less knowledgeable about his case and medical condition would have to step in if sentencing were further delayed. Second, the court cited to the BOP's letter stating it could address any medical problems that might arise while Gooden was incarcerated. Gooden took issue with the adequacy of BOP healthcare services, but the court found no reason to doubt the BOP's letter. Third, the court noted that the earlier reasons for a continuance had been addressed. Specifically, Gooden received his liver transplant and aftercare. And although defense counsel argued Gooden might also require a kidney transplant, the district court

had not been provided with any medical records to support this. None of the three reasons suggests that the denial was motivated by a desire to speed up sentencing arbitrarily.

Gooden also failed to point to any actual prejudice. Gooden argues that a third continuance would have given him time to produce medical records in support of a noncustodial sentence. According to Gooden, a noncustodial sentence would have been appropriate because the BOP is incapable of providing the medical care he needs. Since being sentenced, Gooden has collected medical documents confirming he has stage four kidney disease and hypertensive kidney disease. For these reasons, Gooden claims he was prejudiced.

We are not unsympathetic to Gooden's concerns given his medical history. Nothing in the record, however, indicates that the BOP cannot provide Gooden with adequate medical services. The letter from the BOP is clear and unchallenged: the BOP can provide adequate and proper care. Further, when the district court sentenced Gooden, it also granted him leave to self-report and extended that leave. Thus, even with a custodial sentence, Gooden was able to attend his follow-up appointment. For these reasons, Gooden has failed to show actual prejudice.

Because the district court denied Gooden's motion for three justifiable reasons independent of expediency, and because Gooden's defense was not prejudiced by the denial, the district court did not abuse its discretion.

III. CONCLUSION

We affirm the district court's denial of Gooden's third motion to continue his sentencing hearing.