**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Henry SAUNDERS, Defendant–Appellant.**

**No. 90–5515.**

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1991.

Decided Aug. 15, 1991.

As Amended Aug. 23, 1991.

Alan Cilman, John Kenneth Zwerling, Zwerling, Mark & Sutherlund, P.C., Alexandria, Va., argued (Laura D. Estrin, on brief), for defendant-appellant.

William Neil Hammerstrom, Jr., Asst. U.S. Atty., Alexandria, Va., argued, (Henry E. Hudson, U.S. Atty., on brief), for plaintiff-appellee.

Before PHILLIPS and NIEMEYER, Circuit Judges, and BRITT, District Judge for the Eastern District of North Carolina, sitting by designation.

## OPINION

NIEMEYER, Circuit Judge:

Henry Saunders was convicted by a jury of aggravated sexual abuse under 18 U.S.C. § 2241(a) and was sentenced as a career offender to 360 months imprisonment. 743 F.Supp. 444. On appeal he contends that the district court erred in excluding evidence, under Fed.R.Evid. 412, that the complaining witness was a "skeezer" (a prostitute who trades sex for drugs). He also contends that the government improperly intimidated his witnesses; that the court erroneously refused to give his proposed jury instruction on aggravated sexual assault; and that a leading question by the prosecutor, which elicited hearsay,

amounted to prosecutorial misconduct. Finding no merit to any of these contentions, we affirm.

## I

During the evening of February 8, 1990, Saunders, who was driving a friend's car in Arlington, Virginia, came upon Patricia Duckett and Jackie "Tonka" Harris and agreed to give them rides home. Duckett was an acquaintance and Harris a friend. After driving to a school in Arlington where Harris sold a supply of crack cocaine, Saunders drove him to his home in Alexandria. Duckett and Saunders continued to Saunders' home where they smoked crack cocaine, after which Saunders agreed to take Duckett to a friend's house and then to her home in Fort Washington, Maryland. According to the testimony of Duckett, on the way, Saunders drove his car off into a wooded area that is part of Fort Belvoir, Virginia, where he threatened to "bang [her] up" if she did not have sex with him. When Duckett started to scream, Saunders choked her, threatened to kill her, and pulled down her pants, forcing her to have sexual intercourse. After an intermission, he forced her to have sexual intercourse a second time. Saunders then drove back on to the highway. When he stopped at a traffic signal, Duckett jumped out of the car, ran across the street to a gas station where she told an employee she had just been raped, and asked that he call the police. After police arrived and questioned her, she was able to describe the location of the rape with specificity and to take the police to the location in the woods, where tire impressions matched those of Saunders' car.

After Saunders surrendered to the authorities he was detained in the Alexandria City Jail with another inmate, Eddie Jordan. Jordan testified at Saunders' trial that while he and Saunders were together, Saunders admitted that he "had sex with Patricia Duckett down the highway" on Route 1 at Fort Belvoir.

At trial Saunders took the stand and testified to a different course of events. He denied having had any sexual intercourse with Duckett in the woods at Fort Belvoir as alleged. He denied even having driven to the location identified by Duckett. He testified that earlier in the evening, while Tonka Harris had been temporarily out of the car to sell drugs, Duckett performed oral sex for Saunders and promised that if he "could get her something," she "would make [him] feel real good." When he bought some crack cocaine, they went to Saunders' house, shared the crack, and had consensual sex. He testified that later, when they were in the car again, he and Duckett had an argument because Duckett continued to smoke crack in the car. Saunders did not want Duckett to smoke crack in the car and thought she was already too high. He grabbed the crack from her, slammed the brakes on, and threw the crack out the window. Not believing that he had done that, Duckett got out of the car when it was stopped at a traffic light to look under the seat for the crack. When Saunders demanded that she get back inside, she refused, and Saunders threw her purse at her and drove off, leaving her on the road near the gas station.

Apparently not crediting Saunders' version of the incidents that evening, which were totally inconsistent with Duckett's, the jury convicted Saunders of the rape of Patricia Duckett, as charged.

## II

On Saunders' pretrial motion to offer evidence at trial about Patricia Duckett's past sexual conduct with him and with his friend, Kenneth Smith, the district court conducted an *in camera* hearing pursuant to Fed.R.Evid. 412. At the hearing, Saunders testified to his own prior sexual encounters with Duckett and to a conversation with Kenneth Smith one week prior to the alleged rape, in which Smith said that Duckett was a "skeezer" and that Smith had had sex with Duckett in exchange for drugs. Smith confirmed that he had, in fact, had sex with Duckett, but he invoked the Fifth Amendment when asked if he had exchanged drugs for sex. The district court ruled that Saunders could testify to his own prior sexual relations with Duckett

but that Smith could not testify to his experience with her.

Saunders argues that the court erred in excluding Smith's testimony. He argues that the testimony was relevant to his state of mind that he knew of Duckett's reputation at the time of the alleged rape. He relies on *Doe v. United States,* 666 F.2d 43 (4th Cir.1981). In *Doe,* when confronted with the question of whether "evidence of the defendant's 'state of mind as a result of what he knew of [the victim's] reputation'" was admissible under Fed.R.Evid. 412(a), the court concluded, "There is no indication, however, that this evidence was intended to be excluded when offered solely to show the accused's state of mind." 666 F.2d at 47, 48. The government argues that *Doe* is an incorrect application of Rule 412.

Notwithstanding a question of whether the decision in *Doe,* regarding reputation evidence under 412(a), is correct[1], we find that the district court's ruling in this case was proper.

■ Section (a) of the rule, which applies to *reputation and opinion testimony* of past sexual behavior, prohibits the evidence in every rape trial under Title 18, Chapter 109A (which includes 18 U.S.C. § 2241(a), applicable here), regardless of the circumstances under which it is offered. Section (b), which applies to *other evidence* of past sexual behavior, also prohibits the evidence except in three limited circumstances: (1) when the evidence is constitutionally required to be admitted (section (b)(1)), (2) when the defendant claims that he was not the source of the semen or injury (section (b)(2)(A)), and (3) when the defendant claims that the victim consented, in which case he may testify only to his prior rela-

tions with the victim (section (b)(2)(B)). Thus, the scheme of Rule 412 is that reputation and opinion evidence about a victim's past sexual behavior are never admissible, and evidence of specific prior acts is limited (to the extent constitutionally permitted) to directly probative evidence. *United States v. Torres,* 937 F.2d 1469, 1471 (9th Cir. 1991); *United States v. Duran,* 886 F.2d 167, 168 n. 3 (8th Cir.1989). Rule 412 is an express limitation on the general rules of admissibility of evidence about the prior conduct of witnesses otherwise applicable.

■ In this case, the district judge ruled that Saunders' testimony about his own past sexual relationship with Patricia Duckett was admissible under section (b)(2)(B), and that Smith's testimony, "I had her [Patricia Duckett] home for three days," was inadmissible because it was testimony of specific sexual behavior that did not come within one of the three exceptions of section (b). 736 F.Supp. 698. The only exception arguably applicable to Smith's testimony is that the evidence would be constitutionally required and thereby admissible under section (b)(1). The defendant has a constitutional right to present admissible evidence that is probative of his innocence by showing the government's failure to prove the offense charged, by establishing a defense, or by attacking the credibility or fair mindedness of a witness. *See, e.g., Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Torres,* 937 F.2d at 1471–72. We can discern no constitutional basis, however, that requires the admission of evidence about a three-day relationship between the victim and some third person.

---

1. *Doe* has been criticized for reading an exception into the flat prohibition of Fed.R.Evid. 412(a), when relevant to the defendant's state of mind. *See* Spector & Foster, *Rule 412 and the Doe Case: The Fourth Circuit Turns Back the Clock,* 35 Okla.L.Rev. 87, 96–97 (1982):

   [T]he court arrogated to itself the authority to declare that the categorical mandate expressed in the rule did not fully articulate Congress' intent. Furthermore, the court fashioned and propounded its own exception

to the rule's explicit ban on previous sexual behavior, an exception unauthorized by legislative fiat that is of such magnitude that its very existence threatens to ... vitiate the utility of Rule 412 as a means of implementing the federal legislative purposes motivating its enactment. *But see* Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade,* 70 Minn. L.Rev. 763, 890–93 (1986).

■ Saunders contends that his knowledge that Duckett was a "skeezer" or prostitute corroborated his belief that she consented. A defendant's reasonable, albeit mistaken, belief that the victim consented may constitute a defense to rape. *See* W. LaFave & A. Scott, *Handbook on Criminal Law*, § 47, at 357–58 (1972). When consent is the issue, however, section (b)(1)(B) permits only evidence of the defendant's past experience with the victim. The rule manifests the policy that it is unreasonable for a defendant to base his belief of consent on the victim's past sexual experiences with third persons, since it is intolerable to suggest that because the victim is a prostitute, she automatically is assumed to have consented with anyone at any time. If we were to require admission of Smith's testimony about his affair with Duckett, we would eviscerate the clear intent of the rule to protect victims of rape from being exposed at trial to harassing or irrelevant inquiry into their past sexual behavior, an inquiry that, prior to the adoption of the rule, had the tendency to shield defendants from their illegal conduct by discouraging victims from testifying.

In this case even the district court's admission of evidence that Duckett had prior sexual relations with the defendant was of marginal relevance because consent was not the basis of Saunders' defense. Saunders was charged with a rape that occurred while he and Duckett were in an automobile parked at Fort Belvoir. Instead of contending that Duckett consented, Saunders testified that no sexual intercourse took place at this time and place. His state of mind that Duckett was a "skeezer" is hardly relevant to that defense. Saunders did, however, provide an explanation for the presence of semen based on a consensual affair. He contended that he and Duckett had consensual sexual intercourse earlier in the evening at Saunders' house. For that reason Saunders could justify evidence of his own prior sexual conduct with Duckett under Rule 412(b)(2).

### III

Saunders also argues that Kenneth Smith, Tonka Harris and other witnesses who were subpoenaed by him to testify were contacted by Special Agent John Lichacz of the Federal Bureau of Investigation and threatened, thereby denying Saunders the benefit of their testimony.

■ Improper intimidation of a witness may violate a defendant's due process right to present his defense witnesses freely if the intimidation amounts to "substantial government interference with a defense witness' free and unhampered choice to testify." *See United States v. Hammond*, 598 F.2d 1008, 1012 (5th Cir.1979) (*quoting United States v. Henricksen*, 564 F.2d 197 (5th Cir.1977)); *see also United States v. MacCloskey*, 682 F.2d 468, 479 (4th Cir. 1982). In *Hammond* the court found a due process violation when an FBI agent approached a witness during a recess in the trial and told the witness that he knew "about the situation in Colorado" (referring to a state indictment against the witness) and if the witness continued on, the witness would have "nothing but trouble" in Colorado. *Id.* The court found that these "threats to retaliate" amounted to substantial governmental interference. *Id.* at 1013. Likewise in *MacCloskey* the court found improper interference when the U.S. Attorney telephoned the attorney for a witness, against whom charges had been dropped, and said that the attorney "would be well-advised to remind his client that, if she testified at MacCloskey's trial, she could be reindicted if she incriminated herself during that testimony." 682 F.2d at 475.

■ When a defendant is able to establish a substantial government interference, the inquiry moves to the question of whether it was prejudicial or harmless error. *See United States v. Teague*, 737 F.2d 378, 384 (4th Cir.1984) (contact between government attorney and defendant's witness did not prejudice defendant).

■ In this case, although Special Agent Lichacz did interview Kenneth Smith and Tonka Harris, the record does not demonstrate that the interviews caused either substantial or improper interference, and

therefore that they improperly denied Saunders of his constitutional right to present the unhampered testimony of witnesses in his defense. Because Saunders has not demonstrated a due process violation, we need not reach the harmless error analysis.

Evidence about conversations between Special Agent Lichacz and Smith was never offered. Although Smith was called to testify at the pretrial hearing under Rule 412, during which he invoked the Fifth Amendment when asked about his involvement with drugs, no evidence was elicited from him, or from Special Agent Lichacz (who also testified at the hearing), that Lichacz had threatened Smith or advised him in any way about his testimony. Without any basis in the record, it would be mere speculation for us to assume that such a conversation took place. *Cf. Teague*, 737 F.2d at 382 (trial court conducted hearing at which the facts surrounding the alleged threats were fully developed).

The only evidence relating to potential interference was offered in connection with an interview between Tonka Harris and Special Agent Lichacz when he went to the home of Harris' grandparents to interview Harris. In Special Agent Lichacz's presence, Harris' grandfather advised Harris "to be honest and not to lie." Special Agent Lichacz added to this advice, saying, "just follow your grandfather's advice." Later in the interview Special Agent Lichacz also cautioned Harris about incriminating himself as follows:

> During the course of the interview, Mr. Harris gave me some information that could have been incriminating if he were to relay that information on the witness stand. I told him that he should be careful during the course of his testimony. That's all I told him.

J.A. 366. No other evidence of the conversation was developed. Defense counsel did not cross-examine Special Agent Lichacz or question Harris about the interview and the extent to which he felt threatened, if at all. Moreover, because of the limited interrogation of Harris, he never had occasion to invoke the Fifth Amendment guarantee against incriminating himself.[2] Without more, we cannot say that Special Agent Lichacz's advice so threatened Harris that it amounted to substantial governmental interference in violation of due process.

Although Saunders argues that other defense witnesses were likewise intimidated, there is no factual predicate in the record to support these assertions.

## IV

Finally, Saunders contends that the trial was tainted by prosecutorial misconduct and that the trial court erroneously failed to give a jury instruction defining "sexual act." Both arguments are without merit. The charge of prosecutorial misconduct is premised on hearsay elicited by the prosecutor that Saunders made threats against one of the witnesses. Even if we overlook the fact that no objection was made to this question and no limiting instruction was requested, we nevertheless find any impact to be harmless. As for the jury instruction, the trial judge asked if there were any instructions that counsel felt should have been included. Defense counsel answered "no." Therefore, the defendant has waived this issue. Moreover, Saunders' defense did not turn on whether particular conduct constituted a "sexual act," but on his contention that the conduct alleged by Duckett did not occur.

For the reasons given, we find no reversible error in the conduct of the trial and affirm Saunders' conviction.

**AFFIRMED.**

---

2. Defense counsel's entire interrogation of Harris (beyond asking him his name and address) went as follows:

> BY MR. HUTCHESON:
> Q. Now, Tonka, on the night of February 9, did you ever hear Patricia Duckett ask Henry Saunders to take her home?

> A. No, I didn't.
> MR. HUTCHESON: All right. No further questions.
> J.A. 296.