**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles H. FOSTER, Jr., Defendant–Appellant.**

**No. 95–6645.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 15, 1996.

Decided Oct. 30, 1997.

Charles P. Wisdom, Jr. (briefed), Asst. U.S. Attorney, James E. Arehart (argued), Asst. U.S. Attorney, Mark A. Wohlander, Asst. U.S. Attorney, Office of the U.S. Attorney, Lexington, KY, for Plaintiff–Appellee.

Thomas E. Clay (argued and briefed), Louisville, KY, for Defendant–Appellant.

Before: KEITH, MERRITT and SUHRHEINRICH, Circuit Judges.

KEITH, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. MERRITT, J. (pp. 956–957), delivered a separate concurring opinion.

## OPINION

KEITH, Circuit Judge.

Defendant–Appellant Charles H. Foster (Foster) appeals his jury conviction and sentence for conspiracy to possess and possession with intent to distribute cocaine and cocaine base and engaging in monetary transactions of criminally derived property. For the reasons that follow, we **REVERSE** the judgment of the district court and **REMAND** this case to the district court for a new trial.

## I. BACKGROUND

In February, 1992, the Drug Enforcement Administration in Lexington, Kentucky, initiated an investigation of Reda Ghazaleh (Ghazaleh), and Osama Shalash (Shalash). Charles H. Foster (Foster) was one of the individuals identified as doing business with Ghazaleh and Shalash. Foster was subsequently seen receiving a package from Shalash. Thereafter, Shalash was indicted on drug trafficking charges and began cooperating with the government.

Shalash claimed that he met Foster, whom he knew as Wezo, through Ghazaleh and that Foster began buying cocaine from Shalash in August or June, 1992. Shalash recalled distributing cocaine to Foster on six separate occasions.

In October, 1994, a state search warrant was executed at the home of Timothy Williams, another individual suspected of trafficking drugs. Foster was present at Williams' home as the warrant was being

carried out. During the search, officers found cocaine, cocaine base, baggies, two handguns, and over $80,000 in cash.[1] Foster was also found carrying $3,222 in cash.

On December 9, 1994, a federal search warrant was executed at Foster's home in Lexington, Kentucky. Approximately, $5,245 in cash was seized from Foster's bedroom. Business records were also seized from Foster.

The records revealed that during 1993, Foster—who did not have a known source of legitimate income other than some earnings as a houseman at the Marriott Hotel and who did not file an income tax return for that year—purchased, mostly with cash: (1) a 1986 Mercedes for $13,500; (2) a 1987 Ford for $2,650; (3) a 1989 BMW for $23,263; (4) a cellular telephone for $237; (5) a car stereo for $898; (6) a house lease for $2,904; and (7) auto insurance for $920.

Similarly, in 1994, Foster, who again did not have a known legitimate source of income and who again did not file an income tax return for that year, purchased: (1) a 1987 Ford Bronco for $5000; (2) a 1985 Cadillac for $14,207; (3) a house lease for $6,500; (4) furniture for $1,039; (5) a Bahamas cruise for $2,546; and (6) auto insurance for $1,793. Foster also had $2,402 in a savings account.

In June, 1995, Williams testified before a grand jury on three separate occasions. During the course of Williams' testimony, he consistently testified that Foster had not been involved in selling drugs. Williams strongly asserted that on the day the DEA searched his home, Foster had merely stopped by and that Foster would not have been around if he knew that Williams dealt drugs.

On July 7, 1995, a federal grand jury returned an indictment against Foster. On July 21, 1995, Foster's attorney filed a Motion for Disclosure of Impeaching Information in which he specifically requested a copy of Williams' grand jury testimony. The government did not turn over the testimony but responded on July 28, 1995, that Williams

had "provided false exculpatory testimony regarding [Foster's] involvement with him" and that "Williams[ ] has specifically denied any involvement with [Foster] in any criminal activity."

The indictment against Foster was superseded by the grand jury on August 3, 1995. The superseding indictment charged Foster with: (1) one count of conspiring to possess with intent to distribute and distributing a measurable quantity of cocaine and cocaine base in violation of 21 U.S.C. § 846 (Count 1); (2) possessing with intent to distribute measurable quantities of cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 2); (3) money laundering in violation of 18 U.S.C. § 1957 (Count 3); (4) intimidating a witness in violation of 18 U.S.C. § 1512(b)(2)(A) (Count 4); and (5) deriving and using certain specified personal property in relation to the crimes alleged in Counts 1 and 2 and thereby subjecting such property to forfeiture under 21 U.S.C. § 853 and 18 U.S.C. § 982 (Counts 5 and 6). Foster entered pleas of "Not Guilty" to all counts and was released on bond.

Thereafter, the district court directed the government to submit a copy of Williams' grand jury testimony for *in camera* review. The transcripts were given to the district court on August 22, 1995. On September 5, 1995, six days before the trial, the court ordered the government to release Williams' grand jury transcripts to Foster's counsel by September 7, 1995. The government complied with this order on Thursday, September 7, 1995.

On Friday, September 8, 1995, Foster's attorney called Williams' lawyer and faxed him a copy of a subpoena for Williams and a witness fee check. Williams' attorney allegedly told Foster's counsel that an Assistant United States Attorney had warned him that Williams' grant of immunity would be revoked and Williams would be subject to prosecution if he testified on behalf of Foster. The government has admitted that it made it "clear to counsel for Williams ... that the

---

**1.** This evidence against Williams was eventually suppressed and the charges against him were dismissed.

United States would pursue charges against Williams if he testified."

On September 11, 1995, the first day of trial, Foster moved for a continuance. In support, he claimed that (1) he was not provided with the grand jury testimony of Timothy Williams in time for effective use at trial and (2) it would have been futile to subpoena Williams because the government had threatened to revoke Williams' grant of immunity if he had testified on Foster's behalf.

The district court determined that Foster's counsel failed to exercise due diligence in locating and subpoenaing Williams for trial because his counsel knew as early as July 21, 1995, and no later than August 11, 1995, that Williams was a potential witness but did not issue a subpoena for Williams until September 8, 1995 (three days before trial). The court also found that the issue of whether the government improperly threatened to revoke Williams' immunity if he testified on behalf of Foster was not ripe for consideration because Williams had never been located. The court, thereafter, denied Foster's motion for a continuance.

During the presentation of his defense, Foster also tried to introduce Williams' grand jury testimony into evidence under Rule 804(b)(1) of the Federal Rules of Evidence. The court, however, found that Williams was not "unavailable" under Rule 804 and thus refused to allow the introduction of the transcripts. Again, the court reasoned that Williams' absence was due to defense counsel's lack of diligence.

On September 14, 1995, Foster was convicted of Counts 1, 2, and 3 of the superseding indictment. A judgment of acquittal on Count 4 was also entered.

On September 21, 1995, Foster moved for a judgment of acquittal or a new trial. On October 24, 1995, the court denied the motion. On October 16, 1995, the court granted the government's motion for a Judgment of Forfeiture on Counts 5 and 6.

On December 8, 1995, the court sentenced Foster to 240 months imprisonment on Counts 1 and 2 and 120 months imprisonment on Count 3, both sentences to run concurrently. Foster filed a timely notice of appeal to this Court.

## II.  DISCUSSION

Foster claims that the district court abused its discretion because it failed to (1) grant his motion for a continuance in order that he could secure the presence of Timothy Williams and (2) admit Williams' grand jury testimony under Rule 804(b)(1) of the Federal Rules of Evidence. The district court denied the continuance motion and refused to admit the grand jury testimony because it found that Williams' absence was due to a lack of diligence on the part of Foster's counsel. The district court's determination was based on a belief that a subpoena for Williams should have been issued, at the latest, immediately after the government notified Foster's counsel (on August 11, 1995) that Williams had given false exculpatory testimony.

### A.  Continuance

A trial judge's denial of a motion for a continuance can only be reversed upon a showing of abuse of discretion. *United States v. Martin,* 740 F.2d 1352, 1360 (6th Cir.1984). This Court has found that in order to justify a continuance for the purposes of locating a witness, the moving party must show that the witness would have given substantial favorable evidence and that he was available and willing to testify. *United States v. Sawyers,* 902 F.2d 1217, 1218–19 (6th Cir.1990), *cert. denied,* 501 U.S. 1253, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991).

Foster's most compelling argument in support of his motion for a continuance is his assertion that the Assistant United States Attorney improperly intimidated Williams so that he would not be available to testify at Foster's trial.[2] It is undisputed that the

**2.** Foster also claims that the Assistant United States Attorney acted improperly by not disclosing William's testimony until four days before the trial. The government has a duty, under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196– 97, 10 L.Ed.2d 215 (1963), to disclose exculpatory material in time for effective use at trial. However, in this case the delay in disclosure was not due to the government's refusal to turn the information over as much as to the district court

Assistant United States Attorney made it clear to Williams' counsel that he would pursue charges against Williams if he testified.[3]

■ The Supreme Court has expressly recognized that a party's right to present his own witnesses in order to establish a defense is a fundamental element of due process. *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). This Court has found that government conduct which amounts to substantial interference with a witness' free and unhampered determination to testify will violate due process. *United States v. Pierce,* 62 F.3d 818, 833 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 965, 133 L.Ed.2d 886 (1996); *see also United States v. Saunders,* 943 F.2d 388, 392 (4th Cir.1991), *cert. denied,* 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992). However, even if a defendant is able to prove prosecutorial misconduct amounting to substantial interference with a witness, that misconduct will not result in a new trial if it can be said to be harmless. *See Bank of Nova Scotia v. United States,* 487 U.S. 250, 255–56, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988) (holding that alleged prosecutorial misconduct during grand jury proceedings, including allegations of witness intimidation, was subject to harmless error analysis); *United States v. Hasting,* 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983) (rejecting automatic reversal without regard to prejudice where constitutional error occurs); *see also Saunders,* 943 F.2d at 392 (noting that "[w]hen a defendant is able to establish a substantial government interference, the inquiry moves to the question of whether it was prejudicial or harmless error"); *United States v. Weddell,* 800 F.2d 1404, 1411–12 (5th Cir.1986) (holding that the relevant inquiry, in a case involving witness intimidation, is whether the prosecutor's conduct was harmless beyond a reasonable doubt); *Peeler v. Wyrick,* 734 F.2d 378, 381–82 (8th Cir.), *cert. denied,* 469 U.S. 1020, 105 S.Ct. 437, 83 L.Ed.2d 363 (1984) (holding that the harmless error rule is applicable to cases involving witness intimidation).[4]

■ In this case, the Assistant United States Attorney admitted that he contacted

---

holding on to the transcripts for too long. The district court had the transcripts for almost two full weeks before ordering the government to turn them over to Foster's attorney. When the court finally did order the transcripts disclosed the government promptly complied with the order. Thus, we cannot find that the government's conduct in regards to the disclosure of William's grand jury testimony was improper.

3. The government argues that Foster waived the witness intimidation issue before the district court. This argument is based on a passage from the court transcript in which the court asked "[d]o we agree that it is not necessary to get into a hearing at this time with regard to the immunity issue until such time as Mr. Williams is brought before the Court?" and Foster's attorney nodded his head affirmatively. However, it is clear that Foster's counsel never waived the witness intimidation issue. Foster's motion for a continuance included allegations of witness intimidation. After that motion was denied, Foster's attorney requested a hearing to "make a record about the circumstances" surrounding Williams' absence. Foster's counsel noted, however, that he would not need to present evidence regarding prosecutorial misconduct if the Assistant United States Attorney would stipulate to the facts stated in the government's motion. The government agreed to this stipulation. The court then made the statement about not considering the immunity issue until Williams was found.

This statement is ambiguous in that we do not know for certain what the court was referring to when it said it would not consider the "immunity issue." We cannot find that Foster knowingly waived the prosecutorial misconduct claim from his counsel's nod of the his head to this statement, particularly in light of all the steps that Foster's counsel took to preserve the issue of prosecutorial intimidation.

4. Although earlier decisions have suggested that governmental misconduct which amounts to witness intimidation should automatically require a new trial without regard to a harmless error analysis—*see United States v. MacCloskey,* 682 F.2d 468, 479 (4th Cir.1982); *United States v. Thomas,* 488 F.2d 334, 335–36 (6th Cir.1973)—recent Supreme Court and other Circuit Court decisions, as discussed above, have led us to believe that a harmless error analysis should be used for this type of constitutional violation. This reasoning is consistent with Sixth Circuit case law regarding prosecutorial misconduct in general. *See United States v. Solivan,* 937 F.2d 1146, 1150 (6th Cir.1991) (finding that in analyzing prosecutorial misconduct, court must first determine whether there was misconduct and then whether such misconduct was harmless); *United States v. Krebs,* 788 F.2d 1166, 1177 (6th Cir.), *cert. denied,* 479 U.S. 930, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986) (noting that court must determine whether misconduct on behalf of prosecutor was harmless before granting a new trial).

Williams' attorney to notify him that Williams' immunity would be revoked if he testified at Foster's trial. Williams had already given testimony before a grand jury in which he denied Foster's involvement in dealing drugs. At that grand jury hearing, the government repeatedly made it clear to Williams that it believed he was lying and that his testimony could subject him to perjury charges. Nonetheless, Williams continued to deny any knowledge of Foster's involvement in distributing drugs.[5] Given this exchange and the fact that Williams had his own counsel, it would seem clear that he had an understanding of the consequences that would accompany false testimony. As a result, the government's "warning" to Williams' attorney, a few days before Foster's trial, was at best ill-advised and at worst a possible attempt to intimidate Williams.

However, although the government's conduct in this case was clearly improper, we do not know whether Williams' attorney was able to relay the government's message to Williams. Thus, we cannot discern from the record whether the government's misconduct substantially interfered with Williams' free determination to testify. In addition, even if we found that the government's actions did have a substantial effect on Williams, we are not in a position to determine whether that misconduct was harmless in light of the other evidence against Foster. The district court should have conducted an evidentiary hearing to determine the effect of the prosecutor's actions on Foster's right to a fair trial. However, we do not have to remand this case to the district court for such a hearing because we find that Foster is entitled to a new trial on his second claim.

*B. Grand Jury Testimony*

Foster's second claim is that the district court abused its discretion by not admitting Williams' grand jury testimony under Rule 804(b)(1) of the Federal Rules of Evidence. We agree with Foster that the testimony should have been admitted.

■ Pursuant to Rule 804(b)(1), former testimony is admissible at trial if a declarant is unavailable and if the party against whom the testimony is now offered "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." FED. R. EVID. 804(b)(1). The district court denied Foster's motion to have the grand jury testimony admitted because it found that Foster's counsel had not exercised good faith in attempting to procure Williams' attendance. *United States v. Quinn,* 901 F.2d 522, 527–28 (6th Cir.1990) (finding that a witness will not be deemed "unavailable" unless good faith efforts have been made to locate and present that witness). We review the district court's evidentiary ruling for an abuse of discretion. *United States v. Curro,* 847 F.2d 325, 328 (6th Cir.), *cert. denied,* 488 U.S. 843, 109 S.Ct. 116, 102 L.Ed.2d 90 (1988).

■ The first issue which we must decide is whether Williams was truly unavailable for trial. Rule 804(a)(5) of the Federal Rules of Evidence defines "unavailability of a witness" as follows:

> Unavailability of a witness includes situations in which the declarant—(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance.. by process or other reasonable means.

In *Quinn,* we found that the government's subpoena of a declarant on a Thursday before a Monday trial was not justifiable as a good faith effort because the trial date had

---

5. During one exchange before the grand jury, the Assistant United States Attorney spoke to Mr. Williams as follows:

Q: I've got to be very honest with you, and I am going to make this clear to you, that this is not a game. Your are under oath from the forelady in this panel. You are not only subject to potential perjury for false swearing before this panel, but you are also subject to other perjury charges and also contempt of court for lying before this panel. Now, I want to make that very firm to you before this panel so you understand that this is not a game in here and that I am asking for the truth, and the only way your immunity stands true is if you tell the truth before this panel. Do you understand that, Mr. Williams?
A: Yes.
Q: Now, understanding that, are there answers to any of the questions that you have answered before this panel that you want to change?
A: No.

been set for a month. *Quinn,* 901 F.2d at 528. The government asserts that the present case is similar to the circumstances in *Quinn,* and that therefore Foster's attempts to subpoena Williams three days before the trial were not in good faith.

However, the circumstances surrounding this case are much different than those in *Quinn.* Here, although Foster's attorney believed that Williams had given exculpatory grand jury testimony in July, 1995, he did not know the true substance of that testimony until he actually received the grand jury transcripts on September 7, 1995. The district court retained these transcripts from August 22, 1995, to September 5, 1995, and did not order that they be turned over to Foster's counsel until September 7, 1995. Foster's attorney issued a subpoena · for Williams on September 8, 1995, the very next day. This subpoena was later returned unexecuted.

From even a cursory reading of the transcripts it is clear that Williams' testimony was very important to the defense. Thus, it is difficult to understand why the court did not order the transcripts turned over to Foster's counsel earlier, especially with the trial date quickly approaching. The fact that the government notified Foster's attorney on August 11, 1995, that Williams had given "false exculpatory" testimony does not persuade us that Foster's counsel should have issued a subpoena earlier. As mentioned above, Foster's attorney could not have been expected to know the crucial nature of Williams' testimony until he reviewed the transcripts himself. The government's disclosure that Foster gave "false exculpatory" could have meant that he contradicted himself during the hearing or that he gave testimony which was not what the Assistant United States Attorney expected to hear: a crucial difference which would have been vital in determining whether to call Williams to the stand.

Moreover, the government itself maintains that Williams' absence was not due to any impropriety but instead to problems he had encountered with a local police officer. If

Williams had indeed fled the area because of problems with a local police officer, it is doubtful that he would have honored the subpoena no matter how much earlier it had been issued. As a result, we cannot conclude that Williams' absence at trial was attributable to a lack of diligence on the part of Foster's· counsel. Although a subpoena for Williams was issued in close proximity to the trial date, that was not the fault of Foster's counsel and certainly not the fault of Foster. In our view, the evidence points to Williams truly being "unavailable" for trial.

■ Having determined that Williams was unavailable, we must turn our inquiry to whether the government had an opportunity and similar motive to cross-examine Williams. It is undisputed that the government was able to strenuously question Williams during his grand jury testimony.[6]

Three Circuits have suggested and the District of Columbia Circuit has affirmatively ruled that the government has the same motive to develop a witness' testimony during a grand jury proceeding as it does at trial. *See United States v. Miller,* 904 F.2d 65, 68 (D.C.Cir.1990) (holding that the requirements of 804(b)(1) were satisfied because the government had the same "motive and opportunity to question" the witness at the grand jury hearing as it would have had if the witness had testified at trial); *United States v. Lester,* 749 F.2d 1288, 1301 (9th Cir.1984) (noting that it was erroneous for the trial judge to exclude the grand jury testimony because it did not meet the requirements of Rule 804(b)(1) where the government had ample opportunity to cross-examine the witness during the grand-jury proceedings); *United States v. Klauber,* 611 F.2d 512, 516–17 (4th Cir.1979), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980) (suggesting, but not deciding, that grand jury testimony would have been admissible under Rule 804(b)(1) where prosecutor had previous opportunity to question witness during grand jury proceedings); *United States v. Young Brothers, Inc.,* 728 F.2d 682, 691 (5th Cir.), *cert. denied,* 469 U.S. 881, 105

---

6. As discussed earlier, throughout William's testimony he continually asserted Foster's innocence even though he was repeatedly warned about the dangers of perjury and the risk of losing his immunity.

S.Ct. 246, 83 L.Ed.2d 184 (1984) (noting that Rule 804(b)(1)'s concern for adversarial cross-examination is not present when the government has had a previous opportunity to question a witness during a grand jury hearing).[7]

In addition, this Court has found that a state trial court correctly admitted the prior testimony of a state's witness where that witness became unavailable and the petitioner's counsel previously had sufficient opportunity to crossexamine the witness during a preliminary hearing. *Glenn v. Dallman,* 635 F.2d 1183, 1186–87 (6th Cir.1980), *cert. denied,* 454 U.S. 843, 102 S.Ct. 155, 70 L.Ed.2d 128 (1981). In *Glenn,* we commented that "while petitioner's counsel did not exercise her opportunity to fully cross examine the witness, she still had that opportunity." *Id.* Similarly, we find that Williams' testimony should have been admitted because the government had an opportunity and motive to develop and disprove Williams' testimony before the grand jury.[8]

Indeed, in our view, the fact that the district court did not admit the testimony constitutes an abuse of discretion. This is because Williams' exculpatory testimony could have had a significant impact on the jury's verdict. Foster was never found with any drugs and the only witness who identified him as being a drug dealer, Omar Shalash, was not very credible given his own drug trade involvement. The strongest evidence against Foster seems to be the records which show that he purchased many items without a known source of income. In the face of this evidence, we have Williams' testimony in which he affirmatively denies any knowledge of Foster engaging in illegal activity. In a case such as this one where much of the evidence against Foster was circumstantial and he was facing a substantial sentence, the jury should have had an opportunity to review the grand jury transcripts. We cannot say for certain that these transcripts would not have influenced the jury to acquit Foster. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Accordingly, the judgment of the district court is **REVERSED** and the cause **REMANDED** for a new trial.

MERRITT, Circuit Judge, concurring.

For reasons set out at length in a previous case I wrote for the Court fifteen years ago, *Steele v. Taylor,* 684 F.2d 1193 (6th Cir.1982), I agree with Judge Keith that the exclusion of the grand jury testimony of Williams, together with the government's attempt to prevent Williams from testifying in person, means that there must be a new trial in this case. In *Steele* we said:

> Our research has disclosed no case in which a court upon a finding of wrongful

---

**7.** In *United States v. DiNapoli,* 8 F.3d 909, 914–15 (2d Cir.1993), the Second Circuit found that a prosecutor did not have the same motive to show the falsity of the witness' statements at the grand jury proceeding as it would have at the trial because (1) the defendants had already been indicted when the defense witness was cross-examined during the grand jury hearing and (2) the grand jurors had already indicated to the prosecutor that, as a group, they did not believe the witness' testimony. In this case, Foster was not indicted until a month after Williams had appeared before the grand jury. In addition, although some of the grand jurors may have doubted William's testimony, there was no indication that the group as a whole did not believe Williams. Thus, the two factors which led the Second Circuit to reject finding that the prosecutor had a similar motive in *DiNapoli* are not present in this case.

**8.** Moreover, there is a strong possibility that William's testimony could have been admitted under Rule 804(b)(5) as well. This rule permits the

admission of a statement by an unavailable witness that does not fit within one of the specific hearsay exceptions but has "particularized guarantees of trustworthiness." *United States v. Gomez–Lemos,* 939 F.2d 326, 332 (6th Cir.1991). The statement must go to a material fact and be more probative of that fact than other evidence that can reasonably be found and the interests of justice and the general purposes of the evidentiary rules must be served by the statement's admission. Fed.R.Evid. 804(b)(5). In this case, the fact that (1) the testimony was based on personal knowledge, (2) Williams had already been granted immunity for his testimony and (3) Williams had repeatedly been warned about the consequences of perjury are all factors which support a finding that Williams was telling the truth during his grand jury proceedings. *See United States v. Barlow,* 693 F.2d 954, 962 (6th Cir. 1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983); *United States v. Clarke,* 2 F.3d 81, 84 (4th Cir.1993), *cert. denied,* 510 U.S. 1166, 114 S.Ct. 1194, 127 L.Ed.2d 544 (1994).

conduct has declined to admit prior statements that would have come in had the witness taken the stand.

. . . .

From these cases we derive essentially the same rule as the one stated by the state trial judge: A prior statement given by a witness made unavailable by the wrongful conduct of a party is admissible against the party if the statement would have been admissible had the witness testified. The rule ... is based on a public policy protecting the integrity of the adversary process by deterring litigants from acting on strong incentives to prevent the testimony of an adverse witness. The rule is also based on a principle of reciprocity similar to the equitable doctrine of "clean hands."

*Id.* at 1202. Applying that rule consistently—a rule we applied in favor of the prosecution in *Steele*—I must conclude that it was error to exclude Williams' grand jury testimony when the government had improperly sought to prevent Williams from appearing in court to give live testimony.