File Name: 07a0117n.06
Filed: February 14, 2007

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 03-6617**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| JOE KIDWELL, | ) | **COURT FOR THE EASTERN** |
| | ) | **DISTRICT OF KENTUCKY** |
| Defendant-Appellant. | ) | |

**BEFORE:**    **KEITH, McKEAGUE, Circuit Judges; and CLELAND, District Judge.**[*]

**DAMON J. KEITH**, **Circuit Judge.**  Defendant-Appellant Joe Kidwell ("Kidwell") was indicted and subsequently convicted by a jury on one count of knowingly and intentionally manufacturing approximately 159 plants of marijuana, in violation of 21 U.S.C. § 841(a)(1). Kidwell now appeals his jury conviction alleging, *inter alia*, that his constitutional rights were violated.  Having found none of Kidwell's arguments on appeal to be persuasive, we **AFFIRM** his conviction.

**BACKGROUND**

Beginning in 1984, Kidwell resided in the state of California for approximately 15-16 years. Kidwell has and continues to suffer from poor health conditions, including cancer, diabetes

_____

[*] The Honorable Robert H. Cleland, United States District Court for the Eastern District of Michigan, sitting by designation.

neuropathy, hypertension, severe obstructive sleep apnea, and bipolar disorder. In 1997, while in California, Kidwell was in an automobile accident that caused him severe back injury. As a result of these problems, Kidwell suffered chronic pain and limitations on his mobility. As his medical conditions worsened, Kidwell consulted medical doctors to help alleviate some of the pain. Three California physicians gave Kidwell "recommendations" for the "medical" use of marijuana. Thereafter, Kidwell began using medical marijuana as recommended and approved by these physicians.

Kidwell has used marijuana ever since and has conducted a large amount of research into the legalization of marijuana and its use for medical purposes. This research led to Kidwell's operation of the "First Hemp Bank Distribution Network" ("Network"), a marijuana buyer's club which was based in Venice, California, and which Kidwell licensed to operate in Kentucky. In 1998, Kidwell was arrested and convicted in California for planting, cultivating, and harvesting marijuana. This conviction resulted in a probated sentence. While on probation, Kidwell was directed to abide by several conditions which prohibited the operation of the Network and also the promoting or distribution of marijuana. The conditions, however, allowed Kidwell to continue, under doctor's orders, to use marijuana for pain, but only in his home. A year later, Kidwell violated his probation. However, his probation was reinstated with modifications that allowed Kidwell to grow marijuana for personal medical purposes in his home.

In 2000, Kidwell moved to Kentucky. Upon moving, Kidwell claims that he consulted with personnel from the Drug Enforcement Administration and the United States Post Office about obtaining a license to ship marijuana. Nonetheless, while in Kentucky, Kidwell was arrested and

convicted twice for the possession of marijuana, once in a public place and another in the state courthouse. Both of these convictions resulted in 90-day sentences that were conditionally discharged in exchange for two years of unsupervised probation.

On April 27, 2002, Kidwell rented a house trailer in Knox County, Kentucky. The landlord observed Kidwell moving marijuana plants into the trailer. Kidwell informed the landlord that the plants were in fact marijuana, but that the plants were for his "medical" use. Kidwell also gave the landlord a card that identified him as "Joe Hemp." Law enforcement officers were subsequently notified, and on April 28, 2002, they traveled to Kidwell's trailer. Kidwell met the officers in the roadway and identified himself as "Joe Hemp." He admitted that there were approximately 200 marijuana plants in his trailer. He further explained that the plants were for medical use and he was within his rights to grow them. The officers informed Kidwell that if marijuana was discovered in his residence, it would be seized. Kidwell then declined to give the officers consent to enter. Thereafter, Kidwell's trailer was searched pursuant to a state search warrant, and the officers seized 159 marijuana plants, as well as indoor growing equipment.

On August 22, 2002, a federal grand jury indicted Joe Kidwell for knowingly and intentionally manufacturing approximately 159 marijuana plants. On October 25, 2002, Kidwell was arrested and appeared before a United States magistrate judge for arraignment. After hearing his rights, Kidwell asked "[w]hat if I do pro po (sic) with counsel." (J.A. at 137). In response, the magistrate judge stated, "I'm not familiar with that phrase sir. What does that phrase mean." (J.A. at 137-138). Kidwell further explained "[t]hat means that I do my own defense and I use counsel for my legal – legal verbiage and representation." (J.A. at 138). Through this dialogue, the

magistrate judge acknowledged Kidwell's right to self-representation, but deferred to the district court judge by stating "[i]f it later develops that the trial judge . . . allows you to defend yourself, certainly we would keep [counsel] . . . to assist you[.]" (J.A. at 138).

On October 31, 2002, during his detention hearing, Kidwell's counsel made an oral motion to withdraw from the case. This motion was granted by the magistrate judge, and new counsel was appointed. The magistrate judge also commented that "even though Mr. Kidwell indicated at the arraignment that he might want to represent himself, I don't see that he's got any federal experience. All his experience, criminal experience, has been in state court and I think he needs a qualified attorney under the Criminal Justice Act." (J.A. at 225-26).

A pretrial conference was originally set for December 6, 2002, with trial set for December 16, 2002. Before the pretrial conference, however, Kidwell's second appointed attorney motioned for withdrawal. The district court granted the motion and appointed new counsel. Upon receiving the case, Kidwell's third counsel moved for a continuance. The district court granted the motion, thereby moving the pretrial conference to January 31, 2003, with trial starting on February 10, 2003.

On January 31, 2003, the district court heard arguments regarding several motions that were pending. Important to the present appeal, the district court denied Kidwell's motion to dismiss the action; denied Kidwell's second motion for a continuance;[1] granted Kidwell's motion in limine to strike Kidwell's alias "Hemp" from the indictment, and to preclude the use of the alias by the

---

[1] In requesting the second continuance, Kidwell's counsel argued that he was not prepared to go to trial since he had not been able to contact all of the potential witnesses, investigate all the possible defenses, and that if the court denied his motion, it would be denying Kidwell's right to effective assistance of counsel.

Government at trial;[2] and granted the Government's motion in limine prohibiting Kidwell from introducing any testimony regarding the alleged medical need for marijuana. On February 3, 2003, the district court issued an amended order to reflect the Government's motion in limine to exclude testimony regarding medical necessity or legalization of marijuana.

On February 10, 2003, before trial commenced, Kidwell's appointed counsel alerted the district court that Kidwell "had requested to proceed pro se and was denied that request." (J.A. at 245). Kidwell's counsel added that "[Kidwell] maintained that request with me repeatedly through my representation and he desires to represent himself and in general is objecting to me." (J.A. at 245). The district court entertained the request, asked Kidwell a series of questions, and then denied the request. Kidwell also renewed his motion for continuance, which was denied.

On February 11, 2002, the jury returned a guilty verdict . On April 22, 2003, Kidwell issued a *pro se* letter to the district court requesting a new attorney. The district court granted this request and appointed Kidwell's fourth counsel. Subsequently, Kidwell's fourth counsel withdrew and a fifth attorney was appointed. On November 24, 2003, Kidwell was sentenced to 120 months of incarceration. On December 1, 2003, Kidwell filed a timely notice of appeal to this Court.

## DISCUSSION

On appeal, Kidwell argues that the district court: (1) denied him his Sixth Amendment right to self-representation; (2) deprived him of his due process rights by prohibiting his defense of entrapment by estoppel; (3) erred by allowing the Government to present evidence of an alias; (4)

---

[2] However, the district court stated that its order precluding the use of the alias "Hemp" would not prevent the Government from cross-examining witnesses concerning Kidwell's use of that name.

erred by refusing to grant his continuance; and (5) that the Government's closing argument constituted prejudicial misconduct violating his Fifth Amendment rights. Also, on January 16, 2007, Kidwell, proceeding *pro se*, filed a motion requesting, *inter alia*, that the present case be dismissed and that his conviction be reversed. We find Kidwell's motion to be patently frivolous, and thus it is denied. We will now consider each of Kidwell's claims.

## I. The district court did not violate Kidwell's Sixth Amendment right to self-representation

### A. Standard of Review

"We review a district court's denial of a defendant's request for self-representation for abuse of discretion." *United States v. Pleasant*, 12 F. App'x 262, 265 (6th Cir. 2001) (citing *Robards v. Rees*, 789 F.2d 379, 384 (6th Cir. 1986)).

### B. Analysis

Kidwell argues that the district court violated his Sixth Amendment right to self-representation by denying his requests to proceed *pro se* prior to trial. (Appellant's Br. at 10). The Government claims that Kidwell's assertion of his right to self-representation was not clear and unequivocal, that his request was not timely, and that he was under the influence of narcotics. (Appellee's Br. at 13-15).

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975). "[I]n order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id*. at 835. "A waiver [also] requires a 'clear and unequivocal'

assertion of the right to self-representation." *United States v. Collins*, 129 F. App'x. 213, 217 (6th Cir. 2005) (unpublished) (citing *Faretta*, 422 U.S. at 835). This Court has also noted "that a psychological impairment would go to the question of whether the waiver of counsel was knowing and intelligent." *United States v. McDowell*, 814 F.2d 245, 251 n.2 (6th Cir. 1987). The defendant's request for self-representation must be presented in a timely fashion. *United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994).

Here, once Kidwell expressed to the district court his wish to represent himself, the district court asked him a series of questions to determine whether he "still . . . desire[d] to represent [him]self and give up [his] right to be represented by a lawyer" after being informed of the "penalty that [he] might suffer if [he] [were] found guilty and in light of all the difficulties of representing [him]self"; and the decision was "entirely voluntary on [his] part." *McDowell*, 814 F.2d at 252. At the end of the colloquy, the district court asked Kidwell whether it was still his "intention to proceed in any event to represent [him]self?" (J.A. at 252). Kidwell responded, "Well, your honor – the reason that I wanted to represent myself is to be able to introduce – the only understanding I have, if I may be so bold, is that what I'm charged with is 841(a) and the only thing that the defense from my understanding – my understanding is 822 so my goal was to introduce the exception." (J.A. at 252-53). Kidwell's answer is unclear and open to question. On one hand, Kidwell's answer leads to the conclusion that he wished to represent himself. On the other hand, one could conclude that his answer was only a mere explanation of *why* he wanted to represent himself, not an assertion of his right to self-representation. Since Kidwell's response leaves doubt as to his assertion, we find that Kidwell did not clearly and unequivocally assert his right to self-representation upon being

informed of the dangers of self-representation. *See Martin*, 25 F.3d at 295.

The district court also considered Kidwell's use of prescribed medicines that were narcotic in nature on the morning of the first day of trial. Noting its concern over Kidwell's use of the narcotic medication, the district court considered this as a factor in denying Kidwell's request to represent himself. In *McDowell*, we noted "that a psychological impairment would go to the question of whether the waiver of counsel was knowing and intelligent." *See McDowell*, 814 F.2d at 251 n.2. Since narcotic use on the morning of Kidwell's request could be considered "psychological impairment," we conclude that the district court's denial was not an abuse of discretion in its determination of whether Kidwell's request was "knowing and voluntary."

Moreover, even had Kidwell clearly and unequivocally requested to represent himself, the district court merely denied his request "at this time"—i.e., before trial. At no subsequent point during trial did Kidwell renew his request, even though there were numerous colloquies outside the presence of the jury when he could have done so. After his trial, Kidwell wrote a letter to his trial attorney, and a copy was received by the district court. In the letter he asked for new counsel, but did not suggest that he wanted to represent himself during sentencing. New counsel was assigned, but, after he allegedly threatened her life, replacement counsel was obtained—again, though, he remained silent on self-representation. Only at the end of his sentencing hearing did he even allude in passing to his earlier request for self-representation. Given the district court's denial of Kidwell's request, and his subsequent failure to reassert his request clearly and unequivocally, it "reasonably appears" that he abandoned his initial request to represent himself, and therefore has waived the matter on appeal. *Wilson v. Walker*, 204 F.3d 33, 37-39 (2d Cir. 2000) ("Once asserted . . . the right

to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether.").

## II. The district court did not prohibit Kidwell's defense of entrapment by estoppel

### A. Standard of Review

Whether a trial court precludes a valid defense of entrapment by estoppel is an issue that is reviewed *de novo*. *United States v. Ormsby*, 252 F.3d 844, 850 (6th Cir. 2001).

### B. Analysis

A review of the record shows that Kidwell did not raise an entrapment by estoppel defense before the district court. However, in exercising our appellate discretion, we do not find Kidwell's entrapment by estoppel defense to be persuasive. *See United States v. Martin*, 438 F.3d 621, 627 (6th Cir. 2006) (holding that this Court has frequently addressed belated challenges based on both constitutional and statutory grounds where the question is purely legal and has been fully briefed).

"To determine the availability of the [entrapment by estoppel] defense, the court must conclude that (1) a government must have announced that the charged criminal act was legal; (2) the defendant relied on the government announcement; (3) the defendant's reliance was reasonable; and, (4) given the defendant's reliance, the prosecution would be unfair." *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992). However, "[w]hen this defense is asserted with respect to a federal offense, representations or assurances by state or local officials lack the authority to bind the federal government to an erroneous interpretation of federal law." *Ormsby*, 252 F.3d at 851.

Applying this standard to these facts, Kidwell's argument does not survive the first prong, since he asserts that only state officials authorized him to grow and use marijuana. In particular,

Kidwell refers to his probation condition imposed by a California *state* court allowing him to grow marijuana for medical purposes. As stated, *Ormsby* holds that entrapment by estoppel defense cannot be asserted with respect to a federal offense when the defendant relies on a state official. *Id*. That being the case, Kidwell's reliance on a *state* court judge is unavailing since he was charged with a *federal* offense — cultivating marijuana, in violation of 18 U.S.C. § 841(a)(1). Likewise, Kidwell's reliance on his communications with the Drug Enforcement Administration and the United States Post Master regarding a license to ship marijuana is equally unsuccessful. While Kidwell may have consulted the federal officials about shipping marijuana, there is no evidence that the federal officials gave him the authorization to cultivate marijuana.

## III. The district court did not abuse its discretion by allowing the limited use of Kidwell's alias

### A. Standard of Review

A district court's decision to allow the introduction of certain evidence is reviewed for an abuse of discretion. *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001).

### B. Analysis

"[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Fed. R. Evid. 403. "In balancing prejudice and probative value, trial courts have considerable leeway. Because appellate courts work with a record which cannot fully convey a trial's nuances, dynamics and atmosphere, they have a limited capacity to review the balance struck by the trial court. Consequently, we will not reject a trial court's balancing unless the 'substantial prejudice' clearly outweighs the 'probative value.'" *United States v. Swift*, 809 F.2d 320, 323 (6th

Cir. 1987).

In the instant case, Kidwell argues that the district court erred by allowing the Government to present evidence of an alias. While "[w]e 'strongly disapprove the practice of including aliases in indictments,'" Kidwell's argument is unavailing. *Emuegbunam*, 268 F.3d at 394 (quoting *United States v. Wilkerson*, 456 F.2d 57, 59 (6th Cir. 1972)). During the pretrial conference, the district court granted Kidwell's motion in limine removing the alias "Hemp" from the indictment, and ordering the attorneys to not refer to Kidwell as such. However, the district court stated that it would allow the introduction of business records containing the alias and would not prevent the prosecution from cross-examining witnesses concerning Kidwell's use of that name. Kidwell posed no objection to the district court's order. During trial, the alias "Joe Hemp" was mentioned in a limited manner, consistent with the district court's order, and for the purposes of identity. The alias "Joe Hemp" was mentioned in describing a business card which identified Kidwell as such. It was also mentioned by witnesses who testified that Kidwell introduced and identified himself as "Joe Hemp." Besides identity, the record does not reveal any other usage of the alias. Therefore, we cannot conclude that the district court abused its discretion since the limited references to Kidwell's alias were not unduly prejudicial. *Id*. ("Only when proof of an alias is relevant to identifying the defendant should a court allow its inclusion in the indictment and its subsequent introduction at trial.") (quotation marks omitted).

**IV. The district court did not abuse its discretion in denying Kidwell's motion for a continuance**

    **A. Standard of Review**

"The matter of a continuance is within the discretion of the trial judge, whose decision will be reversed only upon a showing of abuse of discretion." *United States v. Martin*, 740 F.2d 1352, 1360 (6th Cir. 1984) (internal citation omitted). "To determine whether there has been abuse we look to see if the defendant suffered any actual prejudice as a result of the denial, whether additional time would have produced more witnesses or have added something to the defendant's case." *Id.* at 1360-61.

**B. Analysis**

"While we recognize that broad discretion must be granted to trial courts on matters of continuances . . . 'an unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for a delay violates the right to the assistance of counsel.'" *Hunt v. Mitchell*, 261 F.3d 575, 583 (6th Cir. 2001) (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)). "[I]n order to justify a continuance for the purposes of locating a witness, the moving party must show that the witness would have given substantial favorable evidence and that he was available and willing to testify." *United States v. Foster*, 128 F.3d 949, 952 (6th Cir. 1997).[3]

In the instant matter, the district court granted a continuance upon Kidwell's counsel being assigned to the case. During the pretrial conference, Kidwell's counsel moved for another continuance, but the motion was denied. On the first day of trial, Kidwell's counsel renewed the

---

[3] When assessing the propriety of denying a continuance to obtain witnesses, this Court has focused on several factors including "the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony." *Bennett v. Scroggy*, 793 F.2d 772, 774 (6th Cir. 1986).

motion, and upon review, the district court discovered that Kidwell was seeking a continuance to locate twenty witnesses. Eighteen of the twenty witness were going to testify to medical necessity, a defense that had already been excluded by the district court. As for the remaining two witnesses, Kidwell sought the testimony of an attorney in the state of California who advised him on the lawfulness of his conduct, and one of his associates who would corroborate the story. The record indicates that the testimony would support a legalization defense, a defense already excluded by the district court. Notwithstanding, we conclude that Kidwell also failed to provide any indication that the two witnesses would produce "substantial favorable evidence." *See Id*. Therefore, the district court's denial does not amount to an abuse of discretion.

**V.     The prosecution's closing argument was not prejudicial, and Kidwell's Fifth Amendment right was not violated**

**A.  Standard of Review**

"This Court reviews the issue of whether the government's closing argument constituted prosecutorial misconduct, which is a mixed question of law and fact, *de novo*." *United States v. Layne*, 192 F.3d 556, 579 (6th Cir. 1999). "We have adopted a two-step approach to determining whether prosecutorial misconduct warranting reversal took place during a closing argument. First, we must determine whether the prosecutor's remarks were improper." *Id*. (internal citation omitted). "If they appear improper, we then look to see if they were flagrant and warrant reversal." *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002) (citing *United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994)). "To determine flagrancy, we consider: 1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a

series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused." *Id*.

**B. Analysis**

Kidwell contends that the Government commented on his failure to testify or produce evidence by referring to the evidence as being "uncontested," "uncontroverted," or "undisputed." A review of the record reveals that the Government commented that it was undisputed as to how many marijuana plants were seized (159), the substance of the plants (marijuana), where the crime was committed (Knox County, Kentucky), and that Kidwell had just moved the plants into his residence the day before the search warrant was executed. There were no direct comments regarding Kidwell's failure to testify. While "[t]he law is clear that the prosecution cannot comment on a defendant's decision not to testify at trial[,] . . . '[g]eneral references to evidence as uncontradicted, while not recommended, may not reflect on the defendant's failure to testify where witnesses other than the defendant could have contradicted the evidence.'" *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) (fourth alteration in original) (internal citation omitted) (quoting *Byrd v. Collins*, 209 F.3d 486, 534 (6th Cir. 2000)). Here, Kidwell was not the only person who could have been called to contradict the assertions by the Government. Furthermore, while "prosecutors are not allowed specifically to call attention to a defendant's failure to produce evidence," they are allowed to "summarize the evidence and comment upon both its quantitative and qualitative significance." *United States v. Drake*, 885 F.2d 323, 324 (6th Cir. 1989). The Government summarized and commented on the quality of evidence presented. Moreover, the district court instructed the jury about Kidwell's right not to testify or produce evidence. The comments by the Government were

not improper. *See Coyle*, 469 F.3d at 474.

Kidwell also claims that the Government shifted the burden of proof when it stated that the defense had commented in its opening statement that "they were going to prove it wasn't marijuana and it didn't occur in Knox County." (Appellant's Br. at 36). This conduct is not improper because the district court, before the opening statement and after the closing arguments, instructed the jury that the burden of proof remained on the Government. *See Coyle*, 469 F.3d at 474.

## CONCLUSION

For the reasons stated above, we **AFFIRM** Kidwell's conviction.